Nathaniel H. **STEWART,**
**Plaintiff-Appellant,**

v.

Margaret **HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 83–5211.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 20, 1984.

Decided April 4, 1984.

Harry J. Smith, argued, Smith & Cockett, Mountain City, Tenn., for plaintiff-appellant.

John W. Gill, U.S. Atty., Knoxville, Tenn., Guy W. Blackwell, argued, Asst. U.S. Atty., Greeneville, Tenn., for defendant-appellee.

Before EDWARDS and JONES, Circuit Judges, and COOK, District Judge.[*]

GEORGE CLIFTON EDWARDS, Jr., Circuit Judge.

Claimant Nathaniel Stewart appeals from a judgment entered by a District Judge in the Eastern District of Tennessee affirming the denial of social security benefits. Stewart is now 61 years old. The disability which Stewart alleges has prevented him from continuing his previous occupation as an insurance salesman developed in 1980 when he suffered a heart attack. He underwent a four-way coronary by-pass surgical operation on November 6, 1980. He testified that his subsequent efforts to return to work were frustrated by extreme blood pressure elevations caused by emotional stress on his job. He further testified that he had high blood pressure and became fatigued very easily. He also testified that he suffers from severe pains in his legs resulting from the removal of the veins which were used to replace the damaged blood vessels in the by-pass surgery.

Eleven months after the by-pass surgery, Dr. Charles E. Allen, appellant's treating physician, furnished the following letter to the Social Security Administration giving his opinion that appellant is totally and permanently disabled:

Mr. Stewart has been under my care for the past year because of arteriosclerotic coronary artery disease and hypertension. He was hospitalized September 5, 1980, because of acute myocardial infarction. His condition later required rehospitalization. Summaries of both of these hospital admissions are enclosed. Mr. Stewart also was hospitalized at St. Thomas Hospital in Nashville, Tennessee, in November, 1980, where he underwent quadruple coronary artery bypass surgery. Mr. Stewart's postoperative course was complicated by occurrence of depression, and he continues on medication for this.

His hypertension has been very difficult to control. On several occasions his blood pressure has become quite elevated due to emotional stress. This has repeatedly occurred when he has tried to return to his work as an insurance agent, even when he has limited his activities markedly. When he has been able to avoid any type of stressful situation, his blood pressure has been more easily controlled.

Mr. Stewart's present medication consists of Hydrochlorothiazide 50 mgs, once daily, Digoxin .125 mgs. daily, methyldopa 250 mgs. twice daily, nadolol 20 mgs. once daily, and amitriptyline 25 mgs. daily.

---

[*] Honorable Julian A. Cook, United States District Judge for the Eastern District of Michigan, sitting by designation.

Because of his extremely labile blood pressure, in my opinion Mr. Stewart is totally and permanently disabled.

Mr. Stewart testified before an Administrative Law Judge on January 11, 1982 as shown by the record concerning his previous employment.

Q. I believe you've already answered this question, but I'll ask you again for the purpose of the record. Are you required or were you required to drive an automobile in your previous work?

A. Yes, I was required to drive an automobile in my previous work. It was working in these upper 9 counties of east Tennessee. Yes, I had to drive a car.

Q. Can you drive a car now?

A. I can drive a car now, but not in distances and as length of time and so forth that I was able to drive before I had this heart attack.

Q. Why can't you drive a car?

A. Well, number one, my doctor doesn't feel like that I should, and, number 2, I feel that I might be harmful to other people should I have an attack, and I just—I just don't believe I ought to try to overdo something that I shouldn't do.

Q. You have filled out a work history here for Judge Overton that we made a part of the record exhibits today, and I'll ask you if there's any employment that you have done in the past that you feel that you can do at the present time.

A. Now this comes from '66 to '69. I don't believe there's any employment I've done in the past that I can do now.

Q. And this—

A. My previous employment prior to this was selling also, outside selling, and it was—it required driving and lots of hours and lots of stress and strain selling contractors and dealing with contractors selling heavy duty construction equipment.

Q. Are you staying under the care of Dr. Charles Allen?

A. Yes, I am.

Q. And do you have any further appointments to see him?

A. Yes. I just saw him the 6th of this month, and I have an appointment to see Dr. Allen in March. He's been asking me to come in most every month, but lately it's been every 2 to 3 months. I haven't—Yes, I have another appointment to see Dr. Allen. I'm still under his care.

Q. And this medication chart which you filled out for him, are you in fact taking this medication?

A. Yes, I am.

Q. When did you have this open heart surgery?

A. November the 13th, 1980, at Saint Thomas Hospital in Nashville, Tennessee.

Q. And could you tell us what the nature of that surgery was?

A. I—I talked extensively, of course, to the doctors that—Of course, prior to the surgery, I had a stress test, and they run dye into my heart to determine what extent of damage there was, and then they told me I had to have a full bypass, they thought, at least.

And the doctor told me, of course, that they did quite a few of these operations. There was some risk naturally attached to a major operation of this nature. They took me down and put me to sleep and cut me open more or less from my stomach up to my breastbone, which they had to crack and spread me back, and then they took and found that the veins and arteries going to my heart, 4 of them were clogged up. So they had to strip veins out of both of my legs and to—to sew into my heart to replace the bad ones. Pretty sore and painful experience.

The ALJ apparently relied upon a medical report of Dr. Misra. That report concluded as follows:

This is a 58 year old white male, who suffered from two heart attacks in September and October of 1980. Then he was completely investigated and underwent coronary bypass surgery November 1980. Presently, he is not having any chest pains at all and doesn't take any

NTG. Exam of the cardiovascular system showed that he is not in congestive heart failure. There were no significant murmurs or gallops in the heart. His lungs were clear. There is no edema noted. He is taking good medications, looks like keeps it under control. Along the same time in December 1980, he was found to have hypertension and apparently it gives him quite a bit of trouble. He is taking medications as I have mentioned above and his B/P is under adequate control. So far as his cardiac status is concerned he appears to be quite stable and has benefitted from the cardiac surgery. However, his EKG continues to be abnormal showing old myocardial infarction. The Masters exercise test was attempted but this was stopped after about 10 complete steps because he got tired and slightly out of breath. The cause of this remains obscure to me because he is not in congestive heart failure and his lungs are clear. I believe he may have poor muscle tone or he may have deconditioned himself over the period of last 1 year by not climbing any steps. He does about a mile walk every day and doesn't complain of any SOB on level ground.

His doctors have tried various medications and seems like he has been under excellent medical care and finally his B/P has been under good control. Today, his B/P was 130/90 under excellent control. He never had any strokes or blackout spells. He apparently tried to do some kind of work and his B/P started going up again. *It appears, according to his doctors notes and according to the patient, that whenever he gets under stress his B/P goes up. I cannot judge this during this exam but sometimes its possible that in some patients B/P will go up under stress.* But his B/P is under good control at this time. This factor has to be taken into account in his functional capacity. The patient has developed depression by history and is taking Elavil, which seems like keeping him under good control. He was neat and clean, alert and cooperative, well oriented to time and place. He was very pleasant mannered, intelligent, related well and interacted normally. He should be able to handle his own funds. In general, I would say that this patient has cardiovascular disease both hypertension and ASHD. He has been under good medical care and treatment and has received maximum benefits. His prognosis will remain guarded. The heart rate was slightly slow today, and I believe it was due to the medications he is taking. Exam of the rest of the systems were basically negative. Apparently, he has developed cataract on the right eye recently but no operation has been planned so far. In general, he can see well and does wear glasses.

We note that Dr. Misra concluded "this patient has cardiovascular disease both hypertension and ASHD. He has been under good medical care and treatment and has received maximum benefits. His prognosis will remain guarded." He expressed no opinion in relation to whether or not Mr. Stewart was capable of substantial gainful employment.

We note in the record a Veterans Administration insurance disability award marked "total disability" in monthly installments of $100 a month. Finding nothing in this record to suggest that Mr. Stewart is engaged in doing other than accepting the best medical advice he can secure concerning his condition and no evidence that he is exaggerating his difficulties as outlined above; and further finding that this court in *Wood v. Secretary of Health and Human Services,* 667 F.2d 1029 (6th Cir.1981), unpublished that the Suburban Internal Medicine Group in which Dr. Thurman was affiliated had submitted fraudulent examinations and reports in social security cases; we therefore decline to consider Dr. Thurman's opinion in this case.

For the reasons set forth above, this appeal is remanded to the District Court for remand to the Secretary for the award of benefits.