Christine HOUSTON, Plaintiff-Appellant,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,
Defendant-Appellee.

No. 83–5325.

United States Court of Appeals,
Sixth Circuit.

Argued March 16, 1984.

Decided June 14, 1984.

Rehearing Denied July 27, 1984.

James A. Anderson III (argued), Benton, Ky., for plaintiff-appellant.

Ronald E. Meredith, U.S. Atty., David T. Gray (argued), Louisville, Ky., for defendant-appellee.

Before ENGEL and KRUPANSKY, Circuit Judges, and WEICK, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

Appellant Christine Houston appealed from an order of the United States District Court for the Western District of Kentucky affirming the Secretary's decision that appellant was not entitled to disability benefits or supplemental security income under the Social Security Act as amended.

When she applied for benefits appellant was fifty-three years old and had worked from 1962 to 1979 as a hotel maid for the Commonwealth of Kentucky, Department of Parks. In her application dated March 25, 1980 appellant claimed that she was totally disabled because of muscle spasms. She was denied benefits initially by both the examiner and the reviewer. A hearing was subsequently held, and on January 16, 1981, the Administrative Law Judge (A.L.J.) found appellant to be ineligible for benefits. The Appeals Council upheld this decision initially and on remand from the district court, after the submission of additional evidence.

█ When supported by substantial evidence, the findings of fact of the Secretary are conclusive, and a decision denying benefits cannot be overturned. 42 U.S.C. § 405(g). Substantial evidence means more than a mere scintilla of evidence. There must be "such relevant evidence as a reasonable person might accept as adequate to support a conclusion". *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citing *Consolidated Edison v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524 (6th Cir. 1981). Substantiality must also be based on the record "as a whole". *Allen v. Califano*, 613 F.2d 139 (6th Cir.1980). This court is, therefore, charged to review the record in its entirety to determine if the finding of ineligibility was supported by substantial evidence.

To qualify for disability benefits the appellant must provide evidence of a medically determinable disability of a continuous twelve months duration which precluded her from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Appellant was required to prove that the impairment was severe and that it significantly limited her ability to perform basic work-related tasks such as walking, standing, sitting, seeing, speaking, following directions, getting along with co-workers, *etc.* 20 C.F.R. §§ 404.1520, 404.1521. 20 C.F.R. § 404.1522 proscribes combining unrelated physical impairments to satisfy the twelve-month durational mandate.

Appellant's medical records disclosed that she had several unrelated chronic physical ailments. She had abdominal muscle spasms resulting in urinary difficulties which occasionally required catheterization and the use of muscle relaxants. She had hypertension, cardio-vascular disease, osteoarthritis, decreased visual acuity, chronic cystitis, and adjustment disorder with atypical features. She was hospitalized nine times from August 1979 through February 1982 for treatment related to these problems and for other ailments including pneumonia, peptic ulcer and hiatal hernia, from which she recovered. Her treating physician, in a brief conclusory letter, stated that she was permanently and totally disabled. Appellant argued that the diagnosis of these various conditions, her nine hospitalizations, and her doctor's brief statement constituted sufficient proof of disability.

The diagnosis of multiple impairments in appellant's hospital records, however, did

not automatically entitle appellant to benefits, absent proof of sufficient duration and disabling effect. The medical evidence reflected that appellant's impairments were controlled with medication and were not seriously disabling. Her physician described the hypertension as "mild". It did not result in a severe impairment of her cardiac reserve or in any retinal, renal, cerebral, or cardiac involvement, or in any end organ damage. The osteoarthritis caused no real loss of movement. The visual decrease was not significant in acuity or field. The urinary tract infection, although recurrent was treatable, as were the muscle spasms. Moreover, a review of the final diagnoses from the various hospitalizations did not show that any of appellant's impairments lasted for a continuous twelve months. Appellant recovered totally from several of her maladies. Hence there was no clear support for a finding of disability. *See Henry v. Gardner,* 381 F.2d 191, 195 (6th Cir.1967).

Appellant correctly asserted that the opinion of the treating physician should be given greater weight than that of the government's physician. *See Allen v. Califano, supra* at 145. This is true, however, only if the treating physician's opinion is based on sufficient medical data. 20 C.F.R. § 404.1529. Ultimately, the determination of disability is the prerogative of the Secretary, not the treating physician, and the brief conclusory letter from appellant's treating physician, was not dispositive of the issue. *Kirk v. Secretary of Health and Human Services, supra* at 538; 20 CFR § 404.1527 (1981).

Appellant claimed that her muscle spasms alone caused disabling pain. Although pain caused by clinically proven multiple impairments can be the disabling illness, *Allen v. Califano, supra* at 145, (citing *Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383 (6th Cir.1978) and *Noe v. Weinberger,* 512 F.2d 588 (6th Cir.1975)), tolerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant. Since the A.L.J. had the opportunity to observe the demeanor of the appellant, his conclusions with respect to credibility "should not be discarded lightly". *Beavers v. Secretary of Health, Education and Welfare, supra* at 387.

The A.L.J. noted that plaintiff did not appear preoccupied with personal discomfort and was able to get about without difficulty. The medical evidence contained no proof that appellant's spasms were frequent or of disabling severity, and appellant took muscle relaxants to control the spasms. Based on the evidence of record, on appellant's personal appearance and demeanor, he concluded that appellant's muscle spasms were not of such severity, duration, or frequency as to be disabling for a continuous period of twelve months, appellant's testimony notwithstanding.

In conclusion, the record included substantial evidence in support of the finding that appellant was not disabled under the provisions of the Social Security Act. Since the findings of the Secretary were supported by substantial evidence, deference to his decision is statutorily mandated. The decision of the district court is, therefore, affirmed.

WEICK, Senior Circuit Judge, dissenting:

I respectfully dissent.

42 U.S.C. § 423(d)(1)(A) defines "disability" as the

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

The Secretary has prescribed a five step sequential review for processing applications for benefits. *See* 20 C.F.R. § 404.1520 (1983). As this Court noted in *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 528 (6th Cir.1981), the regulations require that an initial determination be made as to whether the claimant is

currently engaged in substantial gainful activity; if so, the claimant is found "not disabled." Second, the Secretary must determine if the claimant has a severe impairment—one that significantly limits the ability to perform work-related functions; if not, then on the medical evidence alone the claimant is determined to be not disabled. Third, if a severe impairment is found, the impairment is compared against those listed in Appendix 1, 20 C.F.R. Subpart P, § 404 (1983), to see if, on the medical evidence alone, the claimant can be found to be disabled. Assuming the claimant is not found disabled by reference to Appendix 1, the fourth step requires inquiry into whether the claimant can perform past relevant work; if so, then the claimant is not disabled. Finally, the Secretary will apply the medical vocational tables, Appendix 2, 20 C.F.R. Subpart P, § 404 (1983), to determine whether the claimant can perform any substantial gainful activity in the national economy; if not, then the claimant can be found to be disabled.

Two different methods are prescribed by the regulations to accomplish the second step of the decisional sequence. Under § 404.1521, an impairment is not severe if it does not significantly limit the claimant's physical and mental abilities to do basic work activities including walking, standing, lifting, carrying out instructions, using judgment and others. Under 20 C.F.R. § 404.1522, as the majority correctly notes, two or more unrelated severe impairments cannot be combined to meet the 12 month duration test of 42 U.S.C. § 423(d)(1)(A), *supra*, even though, for example, two severe impairments six months each in duration in reality may last for a total of twelve months. 20 C.F.R. § 404.1522 continues:

> However, *we can combine unrelated impairments to see if together they are severe enough to keep you from doing substantial gainful activity.* We will consider the combined effects of unrelated impairments only if all are severe and expected to last 12 months. (Emphasis added).

The Secretary has not given adequate consideration to the impact of 20 C.F.R. § 404.1522 on the determination whether Appellant is disabled under the Act.

### I.

Mrs. Houston's relevant medical history is, unfortunately, remarkable. Her first hospitalization began August 18, 1979, and lasted for eight days, during which she was treated for fungal pneumonia and Class IV hyperlipoproteinemia. Mrs. Houston was discharged in markedly improved condition on August 26, 1979, but was restricted from work by her physician for one week following her discharge, pending a follow-up examination.

Mrs. Houston's next hospitalization began October 2, 1979, and lasted for fifteen days. She was treated by Foley catheterization and pharmaceuticals for severe urinary tract infection with cystitis (bladder inflammation), vaginitis, gastritis and a possible renal mass which later turned out negative. Mrs. Houston was discharged in improved condition with a fair prognosis subject to her adherence to her physician's instructions.

On December 29, 1979, Mrs. Houston was hospitalized a third time for seven days, during which she was treated for hypertension, hypokalemia, urinary tract infection with cystitis, gastritis and marked anxiety. Her condition upon discharge was markedly improved, but her prognosis was "[g]uarded due to patient's frequent episodes of urogenital and gastrointestinal difficulties."

Mrs. Houston was next hospitalization for 15 days beginning February 23, 1980. During her stay she was treated again for urinary retention bladder dysfunction with chronic cystitis, anxiety, and hypertension, and also for peptic ulcer disease and sebaceous cysts. The record indicates Mrs. Houston, as before, showed only very slow and gradual improvement relative to her symptoms of chronic cystitis and peptic ulcer disease. Part of Mrs. Houston's treatment again consisted of Foley catheterization. Her condition upon discharge

was stable, but her prognosis was, as before, "guarded due to multiple disease entities."

On August 26, 1980, Mrs. Houston entered the hospital for the fifth time. During her nine day stay, she was treated for anemia, hypertension, chronic cystitis (including treatment by Foley catheterization), severe anxiety, congenital bifida occulta of L5 causing lower back pain, and right lower quadrant pain of unknown etiology. According to her doctor, Mrs. Houston's stay in the hospital was prolonged by severe depression, and although her condition had improved upon discharge, her prognosis was "[p]oor due to the chronicity and multiplicity of these problems and short period of time between episodes."

Mrs. Houston was hospitalized for the sixth time on March 19, 1981, under a provisional diagnosis of chest pain and severe hypertension. The final diagnosis upon her discharge some 12 days later included early congestive heart failure, hypertensive cardiovascular disease including blood pressure of 180/140, macrocytic anemia, costochondritis, chronic obstructive pulmonary disease, and anxiety depression syndrome. In commenting about her condition upon discharge, her physician stated that "[r]egardless of Mrs. Houston's medical stability at present, her absence of chest pain, control of hypertension, due to her multiplicity of disease entities and numerous hospitalizations, it is in my opinion, unlikely that she will ever be gainfully employed *and I have advised Mrs. Houston not to seek work.*" (Emphasis added). Her physician also wrote a letter to the same effect to the Appeals Council on March 24, 1981. On discharge, Mrs. Houston's prognosis was poor, and she was confined for the first week after discharge pending an appointment with her physician.

On November 26, 1981, Mrs. Houston was hospitalized for a seventh time, and was discharged seven days later, on December 3, 1981, with a final diagnosis including mild hypertension, severe urinary tract infection, oral fungal infection, and vaginitis. Her prognosis was "[p]ending

further benefit of medications and patient adherence to physician instructions."

Mrs. Houston's eighth hospitalization lasted for six days after her admission on January 20, 1982. Her final diagnosis indicated irritable bowel syndrome with gastritis, marked anxiety, and possible abdominal hernia. The hernia was later diagnosed and corrected with surgery during her ninth hospitalization lasting from February 15, 1982 until February 23, 1982.

Additionally, the record indicates that Mrs. Houston received hospital treatment at least three times on an out-patient basis: on April 24, 1980, for severe epigastric pain; on August 1, 1980, for urinary retention bladder dysfunction (for which she apparently was treated again by Foley catheterization); and on August 24, 1980, for lower abdominal pain and nausea.

Mrs. Houston underwent a consultative psychiatric examination on July 1, 1980, and was diagnosed as having "[a]djustment disorder with atypical features" and a prognosis of "guarded." Regarding her work related capabilities, the examining psychiatrist felt Mrs. Houston could understand and carry out simple instructions and relate appropriately to co-workers, but that "her ability to maintain sustained and regular work might be severely impaired as she is prone to have ... episodes of pain and complaints that render her incapacitated ..."

Mrs. Houston also underwent a physical examination on July 16, 1980, in which the doctor identified problems including chronic anxiety state with overt neurosis, uncontrolled, and hypertensive cardiovascular disease, controlled. In addition, this physician stated that "[Appellant's] neurosis is quite debilitating at this point and I do feel that she needs further intensive help ..."

At the hearing before the Administrative Law Judge, Mrs. Houston testified that she did not return to her job of 17 years with the Kentucky Park System after her October, 1979 hospitalization at the advice of her physician. Mrs. Houston further testified that although she was told she would not lose her job for up to a year due to her

inability to work, the State had to let her go in the spring of 1980. The Secretary presented no contrary evidence.

Finally, on April 27, 1982, Mrs. Houston's treating physician reiterated by letter his opinion that Appellant is permanently and totally disabled with respect to gainful employment.

## II.

In my opinion, the Secretary has not properly applied the provision of 20 C.F.R. § 404.1522 that unrelated impairments will be combined to see if together they are severe enough to keep the claimant from engaging in substantial gainful activity. During a two year and two month period extending from October 2, 1979 to December 3, 1981, Mrs. Houston was plagued repeatedly by chronic cystitis and urinary retention bladder dysfunction, mild to severe anxiety, and mild to severe hypertension. Although it is true that Mrs. Houston's ailments, theoretically when considered in isolation, may not prevent her from performing basic work activities like sitting, standing, and carrying out instructions, as defined in § 404.1521, the record allows for only one conclusion under § 404.1522: that these ailments when combined have caused Mrs. Houston's inability to engage in substantial gainful activity, and have lasted for over 12 months. *See* 42 U.S.C. § 423(d)(1)(A), *supra.*

The decision of the Secretary reaches the conclusion that Mrs. Houston does not have a severe impairment based on a finding that her ailments, either alone, or in combination, are treatable and do not significantly limit her ability to perform basic work-related functions for at least 12 continuous months. In fact, the only claim of Mrs. Houston which the Secretary considered *in relation to her ability to perform substantial gainful activity* was her complaint of muscle spasms and pain.

The majority's decision is equally unresponsive to Mrs. Houston's condition. The opinion notes that many of her ailments were controlled by medication or were treatable, and did not last for a continuous

12 month period. The opinion, however, fails to address what impact her controlled, treatable conditions of chronic cystitis and hypertension have on her ability to engage in substantial gainful activity under the statute. *Cf. Stewart v. Heckler,* 730 F.2d 1065 (6th Cir.1984) (high blood pressure controlled only in stress-free, non-work environment sufficient for finding of disability). Furthermore, the majority's reliance on the fact that none of her impairments lasted for a continuous period of 12 months is refuted by Mrs. Houston's protracted history of hospitalizations for recurrent problems, including severe chronic cystitis with urinary retention bladder dysfunction, hypertension which was worse in March, 1981, than ever before, and also by her marked and sometimes severe anxiety, which the majority has chosen to ignore altogether. "Disability" under 42 U.S.C. § 423 does not require Mrs. Houston to lie at death's doorstep or to be totally incapacited *every* day for 12 months, to be unable to engage in substantial gainful activity for that same period.

Mrs. Houston's chronic physical impairments may be controlled and treatable, but the record persuasively documents that the impairments certainly are not preventable or curable, and neither are her extended hospital stays required by the chronic exacerbation of her conditions. Between October 2, 1979 and December 3, 1981, Mrs. Houston was hospitalized for a minimum of 63 days, and was further confined to her home by her physician for additional periods extending beyond her hospitalizations. It makes no difference that one can speak, sit, and follow instructions, if the only place in which these activities can be done is the hospital or the home. In light of the impact of the chronic nature of her unrelated physical ailments on her availability for work, it seems clear under 20 C.F.R. § 404.1522 that Mrs. Houston's ailments, when considered in combination, keep her from engaging in substantial gainful activity.

That "substantiality of the evidence must be based on the record taken as a whole" is

well established in social security cases. *See, e.g., Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980). Both the Secretary or the majority, however, have dissected Mrs. Houston into a number of discrete, unrelated chronic physical ailments, contrary to § 404.1522. Her treating physician consistently bases his opinion regarding the advisability of her seeking work, and also her potential for future gainful employment, on the severe, chronic nature of her impairments as a whole. Importantly, the treating physician's opinion that Mrs. Houston should not work and is disabled IS NOT contradicted by either of the physicians who examined Appellant in July, 1980, or by any other part of the record. The government's examining psychiatrist described Mrs. Houston's prognosis as "guarded," and the other physician not only found her suffering from hypertension, but found her neurosis quite debilitating, overt, chronic, and uncontrolled. Furthermore, these doctors offer no other opinion that she is capable of engaging in substantial gainful activity. The fact that reports of physicians who have treated the claimant over a period of time are to be given greater weight than government doctors, *see Allen, supra,* takes on added significance when the reports of government physicians support the treating physician's finding of disability. In this case, the opinion of Mrs. Houston's treating physician that she is disabled ought to be conclusive. This record, as a whole, does not provide substantial evidence to support the decision of the Secretary, as affirmed by this Court.

### III.

The denial of Appellant's claim is disturbing for another reason. 42 U.S.C. § 423(d)(2)(A) requires for the award of benefits that the claimant's impairments "are of such severity that [she] is not only unable to do [her] previous work, but cannot, considering [vocational factors] engage in any other kind of substantial gainful

work..." When an applicant for disability benefits establishes her inability to return to her former occupation, the burden shifts to the Secretary to show that the claimant retains residual capabilities which would permit her to engage in other substantial gainful employment. *Young v. Califano,* 633 F.2d 469, 470 (6th Cir.1980). Convincing proof, consisting of lay testimony supported by medical evidence that the claimant is unable to perform his or her usual work, is sufficient to make a *prima facie* case. *Allen, supra.* Here, Appellant's uncontradicted testimony that the State ultimately released her from her job of 17 years, along with her numerous hospitalizations and the restrictions of her doctor, clearly was sufficient to shift the burden to the Secretary to show that Mrs. Houston was able to perform substantial gainful activity in the national economy.

What is particularly disturbing in this case, however, is the fact that the Secretary's findings of no severe impairment, based on the alleged ability of Appellant to perform basic work-related functions, has allowed the Secretary to deny benefits without determining whether the impairments nevertheless prevent Appellant from engaging in substantial gainful activity, as required by 42 U.S.C. §§ 423(d)(1)(A) and (d)(2)(A).[1] As Chief Judge Morton stated in *Scruggs v. Schweiker,* 559 F.Supp. 100, 103 (M.D.Tenn.1982):

... it appears Congress fully intended [in §§ 423(d)(1)(A) and 423(d)(2)(A) ] that the severity of clinically established impairments be considered in relation to the vocational prospects of the individual. A non-severe finding, with nothing more, does not comply with this statutory requirement.

The Secretary has ignored the fact that Mrs. Houston's impairments have made it impossible for her to return to her former work. In light of her advanced age, limited education, and discharge by the State, she

---

1. Given the Secretary's finding that Appellant did not have a severe impairment under 20 C.F.R. § 404,1520, it is puzzling that the Secretary also concluded Appellant's impairments did not meet or equal in severity the requirements of Appendix 1, Subpart P, § 404, the listing of disabling impairments.

can never obtain other employment. By focusing on the severity of her impairments, we thereby have circumvented the issue of Mrs. Houston's entitlement to benefits if her impairments prevent her from engaging in substantial gainful activity, as prescribed by 42 U.S.C. § 423. Furthermore, we have circumvented the purpose of the Act, for it must be borne in mind that

> [t]he Social Security Act is remedial in nature, seeking to provide assistance to those who are medically unable to secure employment, and is to be construed liberally.

*Walston v. Gardner,* 381 F.2d 580, 585 (6th Cir.1967).

This is not the first case where I have seen the Secretary fail to find "disability" based on a finding of no severe impairment, regardless of the claimant's capacity for substantial gainful employment. Nor, I think, will it be the last.

In my opinion, the decision of the Secretary is not supported by substantial evidence. I would reverse the judgment of the district court and remand to the Secretary for the award of benefits.