805 F.2d 1037
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Frances WILLIAMS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-1814.
 United States Court of Appeals, Sixth Circuit.
 Oct. 6, 1986.
 
 Before ENGEL, NELSON and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Frances Williams appeals from a district court order affirming the Secretary's denial of Mrs. Williams' claim for Social Security disability benefits. Believing, as did the district court, that the Secretary's determination was supported by substantial evidence, we shall affirm.
 
 
 2
 Mrs. Williams, borne in 1926 or 1927, attended school through the sixth grade. She worked as a hotel maid from 1965 until the latter part of 1982. The vocational expert who testified at the administrative hearing described Mrs. Williams' work as unskilled, under the Social Security regulations, with exertional requirements in the "lower end of the medium category."
 
 
 3
 Although Mrs. Williams stopped working in the fall of 1982, saying she "just felt sick everywhere," the first medical report she submitted related to a hospitalization from December 29, 1983, through January 10, 1984--more than a year later. The discharge diagnosis was acute viral gastritis, uncontrolled diabetes mellitus, arteriosclerotic heart disease, arthritis, diabetic retinopathy, and pelvic inflammatory disease. A March 15, 1984, report of Dr. Wood--based upon an examination requested by Michigan's Disability Determination Service--confirmed diabetes, hypertension, mild osteoarthritis, and scarring from burns suffered years before. The final item in the rather short medical record is a July 13, 1984, report of Mrs. Williams' treating physician, Dr. Amalfitano, who diagnosed diabetes, arteriosclerosis, arthritis, hypertension, recurrent respiratory involvement, and hyperlipidemia.
 
 
 4
 At the hearing, Mrs. Williams testified to complaints of constant mid-back pain and headaches, arthritis in her neck, shoulders, arms and knees, and frequent dizzy spells. She also testified that swelling of her left hand, on which she had once suffered a third degree burn, prevented her from taking up hobbies such as sewing; the hand "swells so bad that I can't hardly use it," she said. Her daily activities were said to consist mainly of watching television, reclining on the couch, and walking about the house; her daughter did the shopping, the cooking and the laundry. Upon inquiry by the ALJ as to the frequency of her visits with relatives or friends, Mrs. Williams replied that she had not felt up to leaving the house.
 
 
 5
 The administrative law judge determined that Mrs. Williams could perform her past relevant work and thus was not disabled. We must uphold such a determination if we find it is supported by substantial evidence. Houston v. Secretary of HHS, 736 F.2d 365, 366 (6th Cir.1984). 42 U.S.C. Sec. 405(g). In this instance the determination is so supported.
 
 
 6
 The ALJ acknowledged that Mrs. Williams had a severe hand impairment that significantly limited her ability to perform fine manipulation and involved some loss of grip strength. Accepting Dr. Amalfitano's estimate that Mrs. Williams had lost 40 percent of the grip strength in her left hand, and 30 percent in the right, along with an unspecified loss of fine dexterity, the vocational expert testified and the ALJ found that such restrictions would not preclude performance of Mrs. Williams' past work. The expert explained that employment as a maid demanded gross motor coordination, but the fine manipulation required was only "minimal." While Mrs. Williams had to be able to exert pressure, in scrubbing a tub for example, the vocational expert observed that grip strength was not involved in such work. This testimony, particularly in light of Dr. Wood's finding of no atrophy, spasm, swelling, or diminished range of motion in either hand, constituted substantial evidence in support of the ALJ's finding that Mrs. Williams' hand impairment did not prevent her from returning to her former occupation.
 
 
 7
 In addition to her hand impairment, Mrs. Williams has long suffered from diabetes. At the time of her hospitalization in December of 1983, however, her acute uncontrolled diabetes was said to be a function of her poor compliance with the insulin program that had been directed by her doctor. During her hospitalization Mrs. Williams was instructed in the control of her condition, but Dr. Amalfitano's later report suggests that even as of July, 1984, she was not fully adhering to the diet prescribed to assist in control of her diabetes. Still, Dr. Amalfitano found no end organ damage. While funduscopic examinations uncovered some "arteriolar narrowing," Mrs. Williams does not claim her eyesight interferes with her ability to work, and Dr. Wood's test of her corrected vision indicates no such interference.
 
 
 8
 The hospitalization in December of 1983 was necessitated by Mrs. Williams' own failure to follow her insulin program. Such a failure to follow prescribed treatment justifies denial of benefits. 20 C.F.R. Sec. 404.1530. At the hearing, held in August of 1984, it developed that Mrs. Williams' daughter had by then taken over responsibility for administering the insulin shots, and the diabetes appeared to be under better control. This improvement and the lack of end organ damage constitute substantial evidence in support of the ALJ's determination of the absence of disability from diabetes.
 
 
 9
 Although back pain headed the list of medical ailments related to the ALJ, that complaint was not mentioned in the hospital charts. No tenderness or spinal deformity was noted upon examination at the time of the hospitalization. Dr. Amalfitano did write, in July of 1984, that the claimant suffered from "severe back pain," but the ALJ properly observed that the doctor did not perform any nerve root irritation tests, and the regulations direct that statements of pain be evaluated in view of the underlying clinical findings. 20 C.F.R. Secs. 1527, 1529. In the absence of supporting medical findings, a doctor's conclusory statements regarding disability need not be given significant weight by the Secretary. Garner v. Heckler, 745 F.2d 383, 391 (6th Cir.1984). In this instance, the record medical evidence supports the ALJ's finding of no disabling pain. X-rays taken as part of Dr. Wood's March, 1984, exam only indicate "minimal degenerative change of the lumbar spine." That doctor's examination, prompted by Mrs. Williams' complaint of back pain, found no striking abnormalities and no paraspinal muscle tenderness or spasm. Dr. Wood (who, unlike Dr. Amalfitano, performed a straight leg raising test) concluded that Mrs. Williams merely suffered "mild osteoarthritis" of the spine. Such medical findings constitute substantial evidence in favor of the Secretary. When severity of pain is the issue, moreover, the ALJ's opportunity to observe the claimant should not be ignored. Houston v. Secretary, 736 F.2d at 367, supra.
 
 
 10
 In addition to back pain, Mrs. Williams complained of pain in her neck, shoulders, arms and knees. Upon examination, however, Dr. Wood found no abnormality in any joint, and found limitation of motion only in the left shoulder. No swelling or inflammation was discovered, even though Mrs. Williams complained of such symptoms to Dr. Wood. Furthermore, an entry in the December, 1983, hospital charts noted that "movements of the extremities are normal." Given these findings and our standard of review, we can not overturn the determination that Mrs. Williams' arthritis did not prevent her from working as a maid. We are in a particularly poor position to evaluate subjective claims of disability that depend on the individual's tolerance of pain--which is precisely the reason the ALJ's determination on the severity of pain is owed deference. Houston v. Secretary, 736 F.2d at 367, supra.
 
 
 11
 At the hearing Mrs. Williams complained of headaches, but the hospital charts recorded "no headaches." Dr. Wood noted that Williams was in no distress at the time of his examination, and Dr. Amalfitano's report made no mention of this ailment. Given the absence of medical findings, the ALJ could properly discount Mrs. Williams' claim of constant headaches. As to the testimony concerning dizziness, Dr. Amalfitano did not mention any dizziness and Dr. Wood was told only that "[s]ometimes she has dizziness in the morning when she first gets up." As to hypertension, Dr. Amalfitano listed unremarkable blood pressure readings and no organ damage. Finally, Mrs. Williams has not shown that her arteriosclerotic heart disease impairs her ability to work.
 
 
 12
 Besides questioning the conclusion drawn from the medical evidence, Mrs. Williams takes issue with the ALJ's characterization of the exertional level of her prior work as a maid. It is argued that the "Administrative Law Judge totally misunderstood and mischaracterized the vocational expert's testimony." When the ALJ termed Mrs. Williams' past employment as a maid as "light, sometimes ranging into the lower end of medium," however, he was accurately reflecting the vocational expert's testimony. In the view of the vocational expert, the exertional requirements of a hotel maid ranged from "light at the lowest level up to medium traditionally at the highest level." The expert considered Mrs. Williams' experience to be at the "lower end of the medium category." Mrs. Williams was placed in "medium" category because she occasionally had to lift thirty pound bundles of linens and towels; "light" work, under the regulations, may not include lifting of weights in excess of twenty pounds. 20 C.F.R. Sec. 404.1568(b). The ALJ's written determination suggests no misunderstanding of the requirements of Mrs. Williams' previous employment.
 
 
 13
 The authorities cited by Mrs. Williams do not require a reversal of the judgment. Bonilla v. Secretary of HEW, 671 F.2d 1245 (9th Cir.1982), stands for the proposition that if a claimant is able to prove that she can no longer perform her past work, the Secretary has the burden to demonstrate the existence of other work which the claimant is capable of performing. The claimant in Bonilla proved she could not perform her past work, and the ALJ was held to have erred in concluding that other work existed which Ms. Bonilla could perform; there was no expert testimony as to the exertional requirements of such alternate employment or as to whether Ms. Bonilla's impairment would interfere with such employment. Here, conversely, the ALJ concluded Mrs. Williams could perform her past work, and that conclusion was based upon the vocational expert's testimony regarding the exertional demands placed on maids in general and Mrs. Williams in particular. Valencia v. Heckler, 751 F.2d 1082 (9th Cir.1985), holds that the Secretary may not consider only the least physically taxing elements of the claimant's former employment when characterizing the exertional level of that previous work. No equivalent error occurred here, however, for the ALJ's determination incorporates the opinion of the vocational expert who took into account all of the exertional requirements of Mrs. Williams' previous employment.
 
 
 14
 AFFIRMED.