805 F.2d 1035
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Duane E. MAST, Sr., Plaintiff-Appellant,
v.
Margaret M. HECKLER, Secretary of Health and Human Services,
Defendant- Appellee.
 No. 85-3751.
 United States Court of Appeals, Sixth Circuit.
 Oct. 16, 1986.
 
 Before KENNEDY and MARTIN, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Duane E. Mast, Sr. appeals a denial of disability insurance benefits. He filed his application for benefits on May 26, 1981 and was denied both initially and upon reconsideration. His original complaint for review in the district court was filed on March 2, 1983, and on April 25, 1984 the case was remanded to the Secretary for further evidentiary hearing in light of new evidence submitted to the Appeals Council. After that hearing the Secretary again concluded that Mast was not disabled, and the district court again affirmed the Secretary.
 
 
 2
 Mast argues on appeal that the district court erred in denying his request to extend time to submit a brief and submit the opinion of a vocational expert. He also argues that the Secretary's denial was not based on substantial evidence.
 
 
 3
 Duane Mast was born October 29, 1929 and has a limited tenth grade education. Before he stopped working in August of 1980 he had worked at Allied Resins, Inc. for seventeen years during fifteen of which he was a laborer. This job involved sweeping, mowing grass, dumping garbage, cutting raw materials, unloading box cars, and lifting materials. Mast alleges disability since May of 1980 due to a number of impairments including dizziness, headaches, chest pain, amputation of the toes on his right foot and the fingertips of his left hand, neck and back pain, hypertension, and venous angioma.
 
 
 4
 Mast's first problems arose on December 11, 1979 when he was admitted to the hospital with irregular heartbeats and complaints of chest pain. He was kept in the Coronary Care unit for seventy-two hours under the care of his family physician, Dr. Draulis, and was found to have some myocardial ischemia. After being placed on Quinaglute, his heartbeats became regular, and a cardiogram showed no damage to the heart. He was discharged on December 18 with instructions to stay on the medication, not to return to work for ten days, and to try to lose weight.
 
 
 5
 On May 5, 1980, Mast was examined by Dr. Sardesai of Thoracic and Cardiovascular Associates, Inc., who advised hospitalization for a thorough cardiac workup, and he was admitted to the hospital on May 19. His coronary arteriograms, EKG and stress test were normal and the basic rhythm of sinus origin was within normal limits. On July 15, 1980, Dr. Sardesai reported to Dr. Draulis that Mast had been thoroughly evaluated for his atypical chest pain, and that other than a borderline abnormal resting electrocardiogram the test results were normal. In subsequent reports starting July 21, 1980, Dr. Draulis diagnosed Mast as having angina pectoris and myocardial ischemia and advised that he have a job not requiring heavy lifting. He did not indicate that Mast was unable to work.
 
 
 6
 Mast was examined on July 21, 1981 by Dr. Franklin Krause, an internal medicine and pulmonary disease specialist, pursuant to an Ohio Bureau of Disability Determination request. He diagnosed Mast as having hypertension with normal sinus rhythm and frequent atrial premature contractions, and noted that there was no apparent evidence of intrinsic coronary artery disease or myocardial scars. He stated that the chest pain was reproduced by compressing the lower sternum and right hemithorax and also found that Mast had degenerative changes in the lumbar spine with no obvious functional limitation and that the multiple amputations of fingers and toes resulted in minimal functional impairment.
 
 
 7
 On October 9, 1981, Dr. Brandeberry, a general practitioner, concluded that Mast was totally and permanently disabled. He based this decision on Mast's complaints of chest pain, his 1966 right foot injury, his 1968 left hand injury, complaints of chronic back pain with some muscle spasms, hyper esthesia, and limitation of motion.
 
 
 8
 On July 9, 1984, Mast was examined by Dr. Michael DiCello, a physical medicine and rehabilitation specialist. He found cervical degenerative arthritis with right upper extremity radiculopathy, low back pain syndrome on the basis of degenerative joint disease as well as vertigo and ataxia probably secondary to osteoarthritis of the upper cervical spine. Dr. DiCello concluded that Mast was not a candidate for gainful employment.
 
 
 9
 At the request of the administrative law judge, Dr. Richard Watts, a board certified internist with a specialization in cardiovascular diseases, testified as medical advisor. He stated that Mast had no single or combination of impairments that met any listing between May 15, 1980 and the present, though he did say that because of Mast's dizziness and amputated toes he would be functionally limited from unprotected heights, being around moving machinery, and standing for long periods of time. He stated that Mast was capable of doing medium work.
 
 
 10
 Mast contends on appeal that the district court should have permitted him time to submit the report of a vocational expert. Upon a showing of good cause the court is given broad discretion to enlarge time for completing an act required or allowed under the rules to be completed within a specified time. Woods v. Allied Concord Financial Corp., 373 F.2d 733, 734 (5th Cir.1967); Fed.R.Civ.P. 6(b). Here, the district court ordered on May 14, 1985 that the briefs of both parties were to be filed by June 11, 1985, and stated that extensions of time would not be granted unless good cause were shown. On May 31, 1985, Mast moved for a ninety day extension in order to submit a report from a vocational expert. However, he failed to plead or establish good cause for the submission of this new evidence, or to explain its importance. The court also noted that Mast failed to explain why the evidence was being obtained five years after the initial filing for benefits and one year after the remand order. Though Mast attempts to draw a parallel between the time enlargement requested in his case and that in Wilson v. Secretary of Health and Human Services, 733 F.2d 1181 (6th Cir.1984), the cases bear no resemblance to one another. Wilson involved a remand for the taking of additional medical evidence, a benefit Mr. Mast received at an earlier date. The burden was on Mast in this case to show good cause for an enlargement of time and he failed to do this. Thus, the district court did not err.
 
 
 11
 Second, Mast argues that the decision of the Secretary was not based on substantial evidence. Though there is no dispute that Mast's ability to work is restricted and that he can no longer perform the heavy unskilled labor he once did, the Secretary found that his limitations did not warrant a finding of "disabled." Rather, he was found to be able to perform medium work, leaving available approximately 2,500 unskilled medium, light, and sedentary occupations. Though the opinion of Dr. Michael DiCello conflicts with that of Dr. Watts, the Secretary properly found that Dr. DiCello's conclusion of disability was not supported by complete and specific clinical findings. Without such medical findings for the Secretary to review, Dr. DiCello's opinion is not conclusive. Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 538 (6th Cir.1981). Thus the district court found and we agree that the administrative law judge properly discredited Dr. DiCello's findings. For the opinion of the treating physician to be given greater weight than that of the government's physician, the opinion must be based on sufficient medical data, Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir.1984), which was absent in this case.
 
 
 12
 Accordingly, we affirm the decision of the district court.