837 F.2d 1091
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Veltman O. MANNING, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-6205.
 United States Court of Appeals, Sixth Circuit.
 Jan. 27, 1988.
 
 Before BOYCE F. MARTIN, Jr., NATHANIEL R. JONES, and BOGGS, Circuit Judges.
 BOGGS, Circuit Judge.
 
 
 1
 Veltman O. Manning appeals the district court's decision affirming the Secretary of Health and Human Services' denial of disability benefits under the Social Security Act. Manning argues that the district court erred in finding that substantial evidence existed in the record to support the Administrative Law Judge's findings: (1) that, although Manning suffers from heart disease, it does not amount to a disabling impairment under the "listings" in the Social Security Regulations; and (2) that Manning retains the residual functional capacity to perform light work, defined in 20 C.F.R. Secs. 404.1567(b) and 416.967(b). In addition, Manning argues that the district court erred in finding that his complaints of pain stemming from a cardiac condition were given proper consideration by the ALJ. Upon consideration of the parties' briefs and the record of the administrative proceedings, we find that the Secretary's decision denying benefits is supported by substantial evidence, and that the ALJ gave proper consideration to Manning's subjective complaints of pain of cardiac origin. Accordingly, we affirm the order of the district court.
 
 
 2
 * Manning has not engaged in substantial gainful activity since March 5, 1984, the date he alleges as the onset of disability. Manning alleges disabling pain stemming from cardiac problems which appear to have begun in September 1981, when he was hospitalized with chest pain. Diagnostic procedures at that time revealed that Manning suffered from arteriosclerotic heart disease, and could be treated effectively by a coronary by-pass operation, which was performed on September 10, 1981. Manning had an uneventful recovery, and was discharged, fully ambulatory and with a normal EKG.
 
 
 3
 Subsequent to this surgery, Manning was given a number of "treadmill exercise tests," all of which indicated that he could perform at a level which exceeded that required to establish disability based on ischemic heart disease with chest pain. In November 1981, Dr. Neumann administered a treadmill exercise test which demonstrated that Manning could perform at a 10 MET level, while exercise capacity must be at or below the 5 MET level to establish disability based on ischemic heart disease with chest pain. 20 C.F.R. Part 404, Subpart P, App. 1, 4.04A. The MET, a unit of metabolic exertion, is used to measure the strength of an individual's cardiovascular system. In February 1983, another treadmill exercise test given by Dr. Neumann revealed that Manning could perform at an 11 MET level. In May 1984, another examination and treadmill exercise test given by Dr. Neumann indicated that Manning could perform at a 10 MET level. Thus, the ALJ had ample evidence to conclude that Manning had not met the requirements for establishing a severe impairment based on ischemic heart disease with chest pain, as all of the treadmill test results were well above the 5 MET level.
 
 II
 
 4
 On the question of residual functional capacity to perform light work as defined in 20 C.F.R. Secs. 404.1567(b) and 416.967(b), Manning testified that he could walk "about a mile;" that he watched television for seven and one half hours per day; that he drove his truck twice a week. The residual functional capacity assessment by the Social Security Administration indicated that Manning could frequently lift 50 pounds or more; stand and/or walk about 6 hours per day; sit a total of about 6 hours per day; and push and/or pull capacity was unlimited. As stated above, all of the medical evidence indicates that Manning could perform at a 10 MET level or better in the treadmill exercise tests. Dr. Patterson, a neurologist who examined Manning, could not find anything wrong with Manning's nervous system. The objective evidence from the treating physicians on the results of the treadmill and neurological tests, the indications from the residual functional capacity assessment, and Manning's own testimony, demonstrates that the ALJ's finding that Manning could perform light work is supported by substantial evidence in the record. We also note that in determining the question of residual functional capacity, a treating physician's opinions are generally entitled to substantial weight. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir.1984).
 
 III
 
 5
 While subjective complaints of pain alone may provide the basis for a finding of disability, the ALJ is not required to credit such complaints of pain where there is no objective evidence of an underlying condition which could reasonably cause such pain, or no objective evidence confirming the nature and degree of such pain. Duncan v. Secretary of Health and Human Services, 801 F.2d 847 (6th Cir.1986). In March 1984, Dr. Patterson reported that Manning had normal sensation, with normal reflexes and gait, together with good cerebral function. No evidence of any neurologic abnormality was reported by Dr. Patterson. Since Manning had proffered no objective evidence of a condition which could reasonably cause disabling pain, or evidence which could confirm such pain, the ALJ was within his discretion in not crediting Manning's subjective complaints.
 
 
 6
 Accordingly, the district court's order upholding the Secretary's decision is AFFIRMED.
 
 
 7
 NATHANIEL R. JONES, Circuit Judge, concurring in part and dissenting in part.
 
 
 8
 I agree with the majority's conclusions in Parts I and III of the opinion. However, because I am not convinced that performance at a 10 MET level on a stress test necessarily translates into a residual functional capacity for light work, I cannot join in Part II of the opinion. As the majority points out, the residual functional capacity assessment made by the SSA did indicate that Manning could satisfy the requirements for light work as set out in 20 C.F.R. Secs. 404.1567(b) and 416.967(b). However, this assessment, as far as I can tell, was based entirely on the fact that Manning had performed at the 10 MET level on his stress tests. J.App. at 219-20. The regulations do not, however, define 10 METS, and nowhere is it indicated that 10 METS and light work are synonomous. I imagine that in many cases it may well be that a 10 MET performance would conclusively establish a light work capacity, but I find it significant that there is no hint of this in the Secretary's regulations. Rather, light work is defined in subjective, real world, terms; terms that judges, like myself, can understand.
 
 
 9
 Accordingly, rather than affirm, I would have remanded to the Secretary so that a more complete record can be developed as to the correlation between stress test performance and residual functional capacity.