840 F.2d 18
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Frank TAYLOR, Plaintiff-Appellant
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee
 No. 87-1205.
 United States Court of Appeals, Sixth Circuit.
 Feb. 16, 1988.
 
 Before NATHANIEL R. JONES, and RALPH B. GUY, Jr., Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This is an appeal from the final decision of the Honorable Ralph Freeman, United States District Court for the Eastern District of Michigan, Southern Division, denying plaintiff's application for disability insurance benefits under the Social Security Act. Plaintiff-appellant, Frank Taylor, contends that the Secretary did not apply the proper standard in evaluating his claim of disabling pain and that the Secretary's application of the "Grids" was erroneous because substantial evidence does not exist to support the Secretary's finding that Taylor retains the residual functional capacity to perform sedentary work. Because we find substantial evidence, as did the district court, to support the Secretary's finding that Taylor is not disabled, the district court decision is affirmed.
 
 
 2
 Taylor was born in 1939 and has a high school education. His past relevant work as a meat cutter butcher, a job that requires lifting and carrying up to 100 pounds, is classified as heavy exertional work. Taylor initially experienced lower back pain while lifting in 1969, but continued to work. In 1975, a laminectomy was performed and he returned to his job after six months. Taylor filed for disability benefits on November 8, 1984, claiming disability due to degenerative disc disease and alleging that he became disabled in September, 1983, when he experienced a sharp pain in his lower back while lifting a 100 pound box of meat. His application for benefits was denied initially and on reconsideration.
 
 
 3
 The medical record includes an x-ray and CT scan report from November 27, 1983, prepared at the request of Dr. Shurmur, Taylor's treating physician. These tests reveal disc space narrowing at L4-L5 and L5-S1, sclerosis of the fourth and fifth vertebral bodies, laminectomy defects at L4-L5 on the left, diffuse bulging of the disc at L4-L5, disc calcification, vacuum phenomenon, and slight disc bulging at L5-S1. There was no disc herniation, no spinal cord stenosis, and no evidence of spondylolisthesis. Minimal degenerative changes were present at L4-L5 and L5-S1.
 
 
 4
 On December 3, 1983 Taylor was sent for outpatient treatments after complaining of pain radiating down his left leg. He was diagnosed as having degenerative disc disease. Dr. Shurmur prescribed Naprosyn and Valium, and Taylor received physical therapy. On December 7, 1983, Dr. Shurmur prepared a report, one of seven in the record, for Taylor's past employer. Dr. Shurmur opined that Taylor should not be working and that he would probably never be able to work as a butcher.
 
 
 5
 In another letter to Taylor's former employer, dated January 25, 1985, Dr. Shurmur noted that Taylor continued to experience pain in his left leg and had difficulty sitting and urological problems. He concluded that Taylor was not capable of working at that time. On November 8, 1985, Dr. Shurmur observed that Taylor had spasms with limitation of motion, positive straight leg raising on the left, decreased ankle jerk, and weak EHL (extensor halluces longus muscle serving the toes and ankle). He continued him on Naprosyn and Valium. Dr. Shurmur opined that Taylor was permanently and totally disabled, and should not be working. Dr. Shurmur reported the same results from a physical exam on February 24, 1986. He described Taylor's pain as severe, found decreased sensation in the left foot, and concluded that Taylor could not return to work.
 
 
 6
 Dr. Sanghvi performed a consultative examination on January 3, 1985. He reported that Taylor had full movement of the cervical spine, shoulders, elbows, wrists, and fingers; range of motion of the dorsolumbar spine showed normal lateral flexion, forward flexion at 75 degrees, hyperextension at 10 degrees, and normal rotation. Straight leg raising was 90 degrees on the right and 70 degrees on the left, and Bragard's test was negative. The left thigh and lower leg measured 1/2 inch smaller in circumference than the right, but Dr. Sanghvi did not opine whether this was due to atrophy. Left ankle jerk was absent. Dr. Sanghvi observed no visible or palpable muscle spasms. Taylor walked without a limp, walked on his heels and toes, and could squat. The EHL strength was equal on both sides. Dr. Sanghvi diagnosed post laminectomy, low back pain syndrome, and residual neurological deficits, possibly permanent. He did not comment on Taylor's ability to work.
 
 
 7
 A vocational expert interviewed Taylor at counsel's request on December 14, 1985. No tests were administered. Solely based on Taylor's self-reported limitations, the vocational expert concluded that, if these were accurate, Taylor was not capable of functioning in any regular employment.
 
 
 8
 At the December 5, 1985, hearing before Administrative Law Judge Alfred J. Morad, Taylor testified that he has constant pain in his lower back, which radiates down his left leg. He awakens during the night due to back pain and during the day he must lie down to relieve the pain. His activities include watching television, visiting with friends, reading, and occasionally doing dishes. Although Taylor initially stated that he did not do woodworking at all, after the ALJ noted that his application stated he did, Taylor testified that he does do woodworking while standing for up to 45 minutes. He can sit and drive a car for about 30 minutes, and walks in the mall for an hour. No vocational expert testified at the hearing.
 
 
 9
 The ALJ determined that, although Taylor could not perform his past relevant work as a meat cutter, he had the residual functional capacity to perform sedentary work, and therefore, was not disabled. The ALJ found that Taylor suffered from severe status post lumbar laminectomy syndrome and minimal degenerative disc disease, but that these did not equal an impairment listed in 20 C.F.R. Sec. 404, Subpart P, Appendix 1. He further found that Taylor exaggerated his symptomatology and discredited his complaints of pain. The ALJ then concluded that, based on Taylor's exertional capacity for sedentary work, his age, education, and work experience, the Medical-Vocational Guidelines ("Grids") (20 C.F.R. Part 404, Rules 201.21 and 201.22, Table 1, Subpart P, Appendix 1) directed a determination of not disabled.
 
 
 10
 The Appeals Council denied review. Taylor filed this action in district court. The cause was referred to Magistrate Lynn V. Hoe, who determined that substantial evidence supported the Secretary's denial and recommended that the Secretary's motion for summary judgment be granted. Upon review of Taylor's objections to the report and a full review of the record, the district court concluded that the ALJ's finding that Taylor can perform sedentary work to be supported by substantial evidence. The court further upheld the ALJ's application of the Grids. The cause was dismissed and Taylor appealed.
 
 
 11
 The findings of the Secretary are conclusive if supported by substantial evidence. 42 U.S.C. Sec. 405(g). An appellate court "may not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). Our review is therefore limited to a determination of whether there is substantial evidence in the record to support the findings. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequte to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).
 
 
 12
 Taylor contends that the Secretary did not apply the proper standard in evaluating Taylor's claim of disabling pain. For determinations made prior to January 1, 1987, claims of pain are governed by section 3(a)(1) of the Act, codified at 42 U.S.C. Sec. 423(d)(5)(A), which provides in relevant part:
 
 
 13
 An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or other laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.
 
 
 14
 This circuit discussed the application of this standard in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.1986):
 
 
 15
 First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
 
 
 16
 In the present case, the ALJ determined that there was an underlying medical condition, but that Taylor failed to meet either prong of the second part of the test.
 
 
 17
 Although Taylor is not required to present objective evidence of the pain itself, Duncan, 801 F.2d at 853, Taylor only argues and attempts to establish that there is objective medical evidence to support the claim that Taylor experiences some pain. The real issue is the severity of the pain or the severity of the condition producing the pain, and this was the standard correctly applied by the Secretary.
 
 
 18
 The ALJ noted that there was only slight disc bulging with no herniation, that degenerative changes were minimal, and there was no evidence of stenosis or spondylolisthesis. Furthermore, no surgery was suggested and the medication prescribed was used for mild to moderate pain. No physician diagnosed Taylor's pain as disabling, but only noted that Taylor reported severe pain. The ALJ also noted that Taylor's daily activities were inconsistent with the severity of the pain claimed. Moreover, the ALJ discredited Taylor's subjective reports of pain. Whether pain is disabling requires a credibility assessment, and an ALJ is entitled to great deference in such matters. Beavers v. Secretary of Health, Educ. and Welfare, 577 F.2d 383, 387 (6th Cir.1978); Houston v. Secretary of Health and Human Servs., 736 F.2d 365, 367 (6th Cir.1984); Kirk v. Secretary of Health and Human Servs., 667 F.2d 524, 538 (6th Cir.1981). Taken as a whole, the record contains substantial evidence to support the ALJ's finding that Taylor's pain was not so severe as to be disabling.
 
 
 19
 The ALJ further found that Taylor was unable to perform his past relevant work. The burden then shifted to the Secretary to show that Taylor had the residual functional capacity to perform less demanding work. Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir.1978). The ALJ determined that Taylor could perform a full range of sedentary work and applied the Grids. Taylor argues that the ALJ's determination was not supported by substantial evidence and that, therefore, the Grids are inapplicable.
 
 
 20
 In a letter to Taylor's former employer, Dr. Shurmur opined that Taylor was permanently and totally disabled. However, the Secretary is not bound by a treating physician's conclusory statement that a claimant suffers a disability. Duncan, 801 F.2d at 855. Moreover, all of Dr. Shurmur's evaluations of Taylor's limitations were made in the context of reports to Taylor's past employer relating to Taylor's previous work as a butcher. As noted above, this job is heavy exertional work. Therefore, Dr. Shurmur's comments are not dispositive regarding Taylor's ability to do sedentary work.
 
 
 21
 Pain is a nonexertional impairment, and if significant enough to prevent Taylor from performing a full range of sedentary work, application of the Grids is precluded. Kimbrough v. Secretary of Health and Human Servs., 801 F.2d 794, 796 (6th Cir.1986). Most of Taylor's argument on this issue addresses the ALJ's discrediting Taylor's allegations of pain, and we decline rejecting the ALJ's credibility determination. Additionally, Taylor argues that the Grids are inapplicable because he must alternate standing, sitting, and lying down, thus precluding a determination that he can perform sedentary work. Taylor relies on Wages v. Secretary of Health and Human Servs., 755 F.2d 495 (6th Cir.1985); however, there the claimant's credibility regarding statements of her need to alternate sitting and standing was not questioned. Furthermore, Wage's physician expressly limited prolonged sitting and standing due to the claimant's severe curvature of the spine and other deforming conditions. Wages, 755 F.2d at 498. Here, there is no similar prohibition by Taylor's treating physician.
 
 
 22
 Taylor's daily activities and the objective medical evidence support the ALJ's determination that Taylor could perform sedentary work. Although we recognize that there is conflicting evidence, we find that substantial evidence supports the ALJ's decision, including application of the Grids. Accordingly, we AFFIRM the district court's grant of summary judgment for Secretary, thereby denying benefits.