861 F.2d 720
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Guiseppe DiMAIO, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 87-1814.
 United States Court of Appeals, Sixth Circuit.
 Nov. 7, 1988.
 
 Before KEITH, RALPH B. GUY, Jr., and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 The claimant filed an application for disability insurance benefits in June of 1985 alleging that he became permanently disabled in May of 1984.[1] The Secretary denied the claimant's application initially and upon reconsideration reasoning that while the claimant's impairments were so severe that they prevented him from returning to his prior job, they did not preclude him from performing a wide range of sedentary work. On appeal, the district court referred the case to a magistrate. In his report and recommendation, the magistrate concluded that the Secretary's determination was not supported by substantial evidence and recommended the case be remanded for an award of benefits. The Secretary objected to the magistrate's recommendation on the grounds that he had conducted a de novo review specifically prohibited by 42 U.S.C. Sec. 405(g). Upon reviewing the entire record, the district court found that the Secretary's determination was, in fact, supported by substantial evidence and granted the Secretary's summary judgment motion. For the following reasons, we affirm the district court's ruling.
 
 I.
 
 2
 The claimant, Guiseppe DiMaio, alleged that he became permanently disabled and unable to work as of May 1984, as a result of a knee injury he suffered when he fell from the top of a railcar while working at the Prince Macaroni Company. The claimant further alleged that he subsequently developed debilitating low back pain. DiMaio, who has a seventh grade education and speaks only limited English, previously worked as a drilling machine operator for Ford Motor Company from September 1978 until July 1979, and worked as a railroad machine operator for the Prince Macaroni Company from August 1981 until May 1984. DiMaio asserts that due to his impairments he is limited in his ability to perform such routine tasks as standing and walking for an extended period and lifting over ten pounds. The medical evidence of record is extensive and consists of numerous reports including those authored by five treating physicians (Drs. Salamon, Pollack, Ajluni, Teitge, and Ingall), two examining physicians (Drs. McClellan and Matthews), and one consulting physician (Dr. Goldman).
 
 
 3
 When Dr. Salamon examined DiMaio in June 1984, following his accident, he observed that the claimant's knee was swollen with limited flexibility and concluded that he probably had a torn medial meniscus. Subsequently, Dr. Pollack administered an arthrogram, which confirmed Dr. Salamon's diagnosis, and corrective surgery was performed on DiMaio's knee. Following surgery, Dr. Pollack reported that, while DiMaio's knee remained swollen, the surgery was successful and his scars should heal without difficulty. Thereafter, the claimant saw Dr. Pollack for a series of post-operative examinations. In July 1984, Dr. Pollack reported that, while the claimant limped somewhat, he had regained full extension in his leg. In August 1984, Dr. Pollack noted that DiMaio's gait had improved markedly and that he had a full range of motion in his knees. Dr. Pollack found that there was some slight swelling around DiMaio's left knee and that his left quadricep muscles were still somewhat atrophied compared to those in the right. However, Dr. Pollack also noted that the plaintiff complained of only slight discomfort in his left knee and that his overall condition was markedly improved. Accordingly, Dr. Pollack recommended that DiMaio return to his regular job duties at the Prince Macaroni Company and engage in a rigorous exercise program. After returning to work for a brief period of time, DiMaio's left knee began swelling. Dr. Pollack injected the plaintiff's knee with an anti-inflamatory medication and prescribed a mild pain medication.
 
 
 4
 When DiMaio continued to experience knee pain, he again visited Dr. Salamon in September 1984. Upon a physical examination, Dr. Salamon reported that while DiMaio experienced slight swelling around his left knee, he retained full knee extension with no evidence of joint space narrowing. Dr. Salamon opined that he could not understand why DiMaio continued to experience knee pain and provided him with no pain medication.
 
 
 5
 An examination by Dr. Ajluni in October 1984 revealed a well-healed arthroscopy wound with no evidence of infection. However, Dr. Ajluni detected ligament instability in the left knee and diagnosed DiMaio as suffering from internal derangement in addition to meniscal and ligament problems. Dr. Ajluni referred the claimant to Dr. Teitge for further examination.
 
 
 6
 In December 1984, Dr. Teitge examined the claimant and reported that, while DiMaio's knee swelled slightly, his ligaments were stable and revealed no increased sclerosis. Dr. Teitge diagnosed patellar tendonitis and recommended DiMaio engage in physical therapy. However, a subsequent arthrogram in April 1985 revealed DiMaio's knee had a torn medial meniscus. Based upon these results and Dr. Teitge's recommendation, the claimant underwent a complete medial meniscectomy. Dr. Teitge further recommended that claimant additionally undergo an osteotomy. Despite prescribed physical therapy, the claimant complained that his condition had not improved and consulted with physicians at the University of Michigan (Drs. McClellan and Matthews) to seek an opinion on the advisability of further surgery.
 
 
 7
 Drs. McClellan and Matthews noted that the claimant's left knee had a full range of motion from zero to one hundred twenty-five degrees with no instability in his left knee. However, x-rays of his left knee showed narrowing of the medial compartment with early degenerative changes and some spurring of the tibial spine. Drs. McClellan and Matthews recommended physical therapy and an osteotomy only as a last resort. Despite their advice, the claimant had an osteotomy operation on his left knee in September 1985.
 
 
 8
 Post-operative examinations by Dr. Teitge in October 1985 revealed that, while DiMaio experienced weakness and atrophy in his left knee, he still had a range of motion of zero to one hundred twenty-five degrees. Dr. Teitge indicated that, with physical therapy, DiMaio could improve his knee's strength and muscle tone. When the claimant continued to complain about knee pain, Dr. Teitge recommended he visit Dr. Ingall at the Gertrude Levin Pain Clinic. Dr. Ingall reported that, as a result of successful physical therapy, there was no measurable wasting of the claimant's left thigh or calf muscles. While Dr. Ingall suspected some autonomic hyperactivity in DiMaio's knee, which would account for his ongoing complaints of pain, he found that his knee was not excessively sensitive to pain. Dr. Ingall noted that an epidural block could treat DiMaio's knee hyperactivity.
 
 
 9
 In April 1986, one month after DiMaio's hearing before an administrative law judge (ALJ) and four months after his insured status expired, osteopath Dr. Goldman examined him at his attorney's request. Dr. Goldman observed that the claimant walked with an abnormal gait, could not heel and toe walk, could not squat, and had difficulty changing positions. He noted that the claimant complained of swelling and debilitating pain in his left knee and lower back. A physical examination showed DiMaio's spine was normal. Dr. Goldman diagnosed the claimant as suffering from a status post-severe injury to the left knee ligaments and cartilage and concluded that he was unemployable.
 
 
 10
 On the basis of the medical evidence and the hearing testimony, the ALJ found that the claimant's knee impairment was severe but that it did not meet or equal the severity of the Listings. The ALJ found that DiMaio's knee impairment restricted him to physical work activity that included no more than two hours of continuous standing or walking in an eight-hour day and no more than ten pounds of lifting. The ALJ consulted the Grid and found that, in light of his age and capacity for a wide range of sedentary activity, DiMaio was not disabled. In reaching his conclusion, the ALJ noted DiMaio's good recovery after his initial surgery, his positive responses to physical therapy, and the insights provided by Dr. Ingall of the Pain Clinic. The ALJ discredited DiMaio's complaint of knee pain as well as his claimed degree of inactivity. The ALJ noted that DiMaio acknowledged that he could sit for extended periods of time, could drive when necessary, took only mild pain medication, and experienced none of the manifestations typically accompanying chronic pain. Despite a magistrate's contrary recommendation, the district court concluded that the Secretary's determination was supported by substantial evidence.
 
 III.
 
 11
 DiMaio argues on appeal that the Secretary failed to prove with substantial evidence that he could engage in substantial gainful employment. DiMaio specifically challenges the Secretary's rejection of his subjective complaints of debilitating pain. The burden initially rests upon the claimant to establish that he has an impairment that is so severe so as to preclude him from returning to his prior work or any other work in the national economy. 42 U.S.C. Sec. 423(d); 20 C.F.R. Sec. 404.1505 (1988); Mathews v. Eldridge, 424 U.S. 319 (1976); Townsend v. Secretary of Health and Human Services, 762 F.2d 40 (6th Cir.1985). Once a claimant establishes that he cannot return to his prior work, the burden shifts over to the Secretary to come forward with evidence that there are other jobs in the national economy that the claimant still can perform. 42 U.S.C. Sec. 423(d)(2)(A); 20 C.F.R. Sec. 404.1520(f); Heckler v. Campbell, 461 U.S. 458 (1983); Kirk v. Secretary of Health and Human Services, 667 F.2d 524 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). The Secretary's final decision, if supported by substantial evidence, is conclusive. 42 U.S.C. Sec. 405(g); Richardson v. Perales, 402 U.S. 389 (1971); Mullen v. Bowen, 800 F.2d 535 (6th Cir.1986).
 
 
 12
 It is undisputed that pain can significantly compromise an individual's ability to perform substantial gainful activity. However, the Social Security Act requires that subjective complaints of pain be supported by objective medical evidence. 42 U.S.C. Sec. 423(d)(5)(A); 20 C.F.R. Sec. 404.1529. In Duncan v. Secretary of Health and Human Services, 801 F.2d 847 (6th Cir.1986), this court articulated a two-prong analysis to evaluate subjective symptomology. We stated that there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. The determination of disability based on pain depends largely upon the credibility of the claimant. Houston v. Secretary of Health and Human Services, 736 F.2d 365 (6th Cir.1984). While the Secretary is not permitted to discredit claimant's testimony solely on observations made at the hearing, since the Secretary has the opportunity to observe the claimant's demeanor and credibility, his observations should not be discarded lightly. In the instant case, the Secretary articulated reasons beyond his observations at the hearing for discrediting DiMaio's allegations of disabling pain and inactivity. While the objective medical evidence established that DiMaio suffered from a severe knee injury, the Secretary stated that a review of the entire medical record, including his successful recovery from each knee operation, his knee's nearly full range of motion, the findings by the Pain Clinic, and his failure to take stronger pain medication, were inconsistent with his assertions of debilitating pain. Upon concluding that DiMaio's knee injury prevented him from returning to his prior work, the Secretary took into account the claimant's physical impairment, age, and educational background in applying the Grid and determining that claimant was not disabled.
 
 
 13
 We find that the Secretary's determination was supported by substantial evidence. The magistrate, in recommending that the Secretary's decision be overturned, improperly reweighed the medical evidence. The district court properly rejected the magistrate's recommendation since the Secretary's determination that the claimant was not disabled was supported by substantial evidence.
 
 
 14
 For the foregoing reasons, we AFFIRM the district court's granting of the Secretary's summary judgment motion.
 
 
 
 [1]
 The claimant's insured status for Title II disability insurance benefits expired December 31, 1985