**Fidelia VALENCIA, Plaintiff-Appellant,**

**v.**

**Margaret HECKLER, Secretary of Health and Human Services,\* Defendant-Appellee.**

**No. 83–6223.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1984.

Decided Jan. 15, 1985.

---

\* The Secretary of Health and Human Services is substituted for the Secretary of Health, Education and Welfare as appellee pursuant to Fed.R. App.P. 43.

Martin Taller, Rucker & Taller, Anaheim, Cal., for plaintiff-appellant.

Joseph Stein, Dennis J. Mulshine, U.S. Dept. of Health & Human Services, San Francisco, Cal., for defendant-appellee.

Before WRIGHT, FERGUSON, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Fidelia Valencia applied for supplemental security benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383 (1982), and for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401–433 (1982). She alleged that she had become disabled as a result of a back injury sustained in February, 1977. She is currently 63 years old and was 56 at the time of the onset of her alleged disability. She was born and raised in Mexico where she received an education through the third grade. She speaks Spanish, and is only marginally capable of reading, writing, and speaking English.

After a hearing, an administrative law judge found Valencia not disabled within the meaning of the Social Security Act and denied both benefit applications. The Appeals Council denied Valencia's request for review of the administrative law judge's decision. The Appeals Council decision constituted the final decision of the Secretary. Valencia then brought suit in federal district court, claiming the Appeals Council erred in denying her request for review.

Upon the recommendation of a magistrate, the district court granted summary judgment against Valencia. This appeal timely followed.[1]

## I. DETERMINING "DISABILITY" UNDER THE ACT

Claimants are "disabled" within the meaning of the Social Security Act if a medically determinable physical or mental impairment prevents them from engaging in "substantial gainful activity." *See* 42 U.S.C. § 423(d)(1)(A) (1982). The statute further elaborates upon this definition, requiring a showing that the claimant's

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A) (1982).

In 1978, the Secretary of Health and Human Services promulgated regulations implementing this statutory definition. *See* 43 Fed.Reg. 55,349 (1978) (codified as amended at 20 C.F.R. pt. 404, subpt. P (1984)). Unless the impairment is identified by the regulations as conclusively "disabling," the Secretary must determine whether the claimant retains the ability to perform either his former work or other less demanding employment.

---

1. We have been advised that in a subsequent administrative proceeding the Appeals Council has affirmed an administrative law judge's decision that Valencia was "disabled" as of May 28, 1982 and entitled to benefits thereafter. Be-

cause this appeal necessitates a determination of whether Valencia was entitled to disability benefits as of February, 1977, the question before us has not been rendered moot by the subsequent administrative decision.

With the exception of the relatively small number of cases in which an individual's impairment is classified as per se "disabling," the Secretary must first ascertain whether the applicant can engage in his former work. If he can, he is not entitled to disability benefits. 20 C.F.R. § 404.1520(e) (1984). In determining whether an applicant can perform his former work, the Secretary compares his physical and mental capabilities ("residual functional capacity") with the physical and mental demands of his past jobs.[2] *Id.*

If the claimant is found unable to engage in his former work, the Secretary must then determine whether, considering the factors which Congress has identified as relevant—the applicant's physical ability, age, education, and *work experience*, he is able to perform less demanding work. 20 C.F.R. § 404.1520(f) (1984). As part of the 1978 regulations, the Secretary developed a matrix of medical-vocational guidelines in an effort to improve both the uniformity and efficiency of this determination. *See* 20 C.F.R. pt. 404, subpt. P, app. 2 (1984). The guidelines consist of a series of tables which in most cases direct a conclusion of disability or nondisability depending upon the relationship of the four variables which Congress has identified. *See Stone v. Heckler,* 722 F.2d 464, 468 (9th Cir.1983) (citing *Heckler v. Campbell,* 461 U.S. 458, 462, 103 S.Ct. 1952, 1955, 76 L.Ed.2d 66 (1983)).

## II. THE ADMINISTRATIVE FINDINGS

The administrative law judge concluded that Valencia was not disabled, finding that her alleged impairments did not prevent her from meeting the mental and physical demands of her previous occupations. The administrative law judge classified her past relevant work as "medium" grade in exertional effort. He found that Valencia retained the ability to engage in "medium" work and thus concluded that she was not disabled under the Act.

Before the Appeals Council Valencia contended that the administrative law judge erred in concluding that she retained the capacity to perform "medium" work. However, the Appeals Council did not address that question when it denied her request for review. Instead, it noted that she had past relevant work which could be classified as "light" and found that because Valencia retained the ability to engage in "light" work she was not "disabled."

Thus, both the administrative law judge and the Appeals Council found Valencia able to perform her past relevant work. As a result, neither proceeded to step two, the application of the medical-vocational factors incorporated in the grids, in order to determine whether Valencia could engage in other forms of less demanding employment.

We conclude that the Appeals Council erred in finding that Valencia had past relevant work which was "light." Rather, the administrative law judge correctly classified Valencia's past relevant work as "medium" grade. We further find, however, that the administrative law judge's conclusion that Valencia retained the ability to engage in "medium" work is not supported by substantial evidence. We therefore conclude that both the administrative law judge and the Appeals Council erred in finding Valencia capable of engaging in her past work. As a result, the resolution of Valencia's disability claim ne-

---

2. The regulations categorize occupations according to their physical exertion requirements, classifying jobs as either "sedentary," "light," "medium," "heavy," or "very heavy." 20 C.F.R. § 404.1567 (1984). The regulation defines "light" and "medium" work as follows:

(b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls....

(c) *Medium work.* Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 404.1567(b) & (c) (1984).

cessitates an application of the grids in order to determine whether she can perform other less demanding work.

## III. VALENCIA'S "PAST RELEVANT WORK"

During the ten years she was in the United States prior to her injury, Valencia worked for eight years as a kitchen helper at various nursing homes and for two years as an agricultural laborer. As a kitchen helper, Valencia performed numerous functions, including cooking and preparing food, washing dishes, and carrying food trays to patients. These various tasks frequently involved the lifting and carrying of heavy industrial-size kitchenware. In her two years as an agricultural laborer, Valencia also performed various tasks, including hoeing and harvesting tomatoes, harvesting cherries, and sorting tomatoes at a machine.

The administrative law judge classified both Valencia's job as a kitchen helper and her job as an agricultural laborer as "medium" grade in exertional effort. The Appeals Council "noted," however, that some of Valencia's "past relevant work" could be classified as "light." Since it concluded that Valencia could still perform "light" work, it denied her request for review. The Appeals Council failed, however, to specify what past relevant work it classified as "light."

■ The government contends that the unexpressed finding of the Appeals Council was that tomato sorting, one of the many tasks Valencia performed during her employment as a farm worker, constituted the past relevant work. It further asserts that tomato sorting should be classified as "light" work.[3] Therefore, the government concludes, the Appeals Council properly found that Valencia's past relevant work

included light work. We think the government correctly explains the rationale for the Appeals Council's conclusion. However, we find that conclusion to be based on an error of law.

Valencia's sorting of tomatoes may not properly be regarded as "past relevant work."[4] Valencia sorted tomatoes as one of many tasks she performed at the various farms where she was employed as an agricultural laborer. Indeed, the evidence reflects that even during the one six-week period when the majority of her time was spent sorting tomatoes, Valencia also performed the other tasks customarily performed by agricultural workers, including hoeing and harvesting the fields.

■ Every occupation consists of a myriad of tasks, each involving different degrees of physical exertion. To classify an applicant's "past relevant work" according to the least demanding function of the claimant's past occupations is contrary to the letter and spirit of the Social Security Act.

■ As previously noted, both the Social Security Act and the Secretary's regulations provide that disability determinations are to be made according to a two-step process. First, it must be determined whether the applicant can perform his "previous work." If not, the Secretary must then determine whether the claimant can engage in other, less demanding, work which exists in the national economy. *See* 42 U.S.C. § 423(d)(2)(A) (1982). It is at the second step of the process that the Secretary is authorized to consider the four factors, including "work experience," incorporated in the grids. *Id.; see also*, 20 C.F.R. § 404.1520(f) (1984). Thus, the statute and regulations direct the Secretary to first determine whether a disability claimant can

---

**3.** The government relies upon the testimony of a vocational expert presented at the hearing before the administrative law judge. The expert classified the job of "produce sorter" as unskilled and light work.

**4.** The administrative law judge correctly characterized Valencia's past relevant work as "kitchen

helper" and "agricultural laborer," rather than as "tomato sorter." Thus, the administrative law judge correctly classified Valencia's past employment as "medium work," notwithstanding the vocational expert's testimony referred to in n. 2, *supra*.

perform his past job or occupation *before* examining whether the skills and training acquired by the claimant through his previous work experience have equipped him to undertake other similar or related jobs.

Our decisions have consistently recognized that the initial inquiry in determining disability is whether the claimed impairment prevents the individual from engaging in his previous "job" or "occupation." *See, e.g., Stone v. Heckler*, 722 F.2d at 468; *Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir.1982); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir.1982). It is only after we have found the claimant unable to perform his past job that we have examined his "work experience" and the other medical-vocational factors identified as relevant by Congress. *See Allen v. Secretary of Health & Human Services*, 726 F.2d 1470, 1472 (9th Cir.1984); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984); *Stone v. Heckler*, 722 F.2d at 468.

■ The government's position ignores the dual nature of the inquiry demanded by the Social Security Act and recognized by our decisions. It collapses the two separate inquiries into one and would, in large numbers of cases, eliminate the use of the recently adopted grids. The government's argument, in effect, is that if a claimant is unable to perform any of his past jobs, but retains the capability to perform a particular task associated with one of those jobs, the claimant is nonetheless able to perform his "past relevant work." We disagree. Under the government's theory, in almost all cases it would only be necessary to examine whether the claimant could perform "light" or "sedentary" work. To reduce the disability determination to such an inquiry is inconsistent with both the statutory scheme and the regulatory framework enacted by the Secretary. Where an individual cannot perform any of his previous jobs, but only one or more tasks associated with those jobs, the first of the two inquiries required by the statute must be resolved in the claimant's favor.

To summarize, if the claimant's disability renders him incapable of engaging in his previous occupations, he is unable to perform his "past relevant work." At this point, however, the Secretary is free to consider, as a part of the second step in the process, the skills which the claimant has previously developed in order to determine whether the applicant is able to perform *other* available work. It is at the second, not the first, step of the disability determination that the Secretary is aided by evidence regarding the claimant's previous "work experience," skills, and training.

■ In the case before us, we reject the government's contention that, because Valencia remains capable of sorting tomatoes, she can still perform her "past relevant work." The administrative law judge properly regarded Valencia's "past relevant work" as consisting of her eight years employment as a "kitchen helper" as well as her two years as an "agricultural laborer."[5] The government does not contest the administrative law judge's determination that both of these positions are classified as "medium" work. Accordingly, we conclude that the Appeals Council erred in "finding" that Valencia had engaged in past relevant work that was "light".

## IV. VALENCIA'S "RESIDUAL FUNCTIONAL CAPACITY"

■ Although the administrative law judge found Valencia's "past relevant work" to be "medium" grade in exertional effort, he further found that she retained the ability to engage in "medium work" and thus concluded that she was not disabled for purposes of the Act. We conclude there is insufficient evidence to sup-

---

5. We note that both the Appeals Council and the administrative law judge classified Valencia's experience as a kitchen helper as "medium work," and neither felt it appropriate to single out a particular aspect of the job, such as food preparation, in order to conclude that Valencia had engaged in "past relevant work" that was light. The administrative law judge considered Valencia's experience as an agricultural laborer along the same lines, classifying the job as "medium work" notwithstanding the fact that one of its component tasks could have been regarded as "light." The Appeals Council erred in concluding otherwise.

port the administrative law judge's finding that Valencia remains able to engage in "medium work." [6]

Numerous doctors examined Valencia and rendered opinions regarding the extent to which her injuries impaired her ability to perform work-related activities. At least three of the examining doctors expressly concluded that Valencia's injuries were so severe that she could only undertake work involving minimal physical exertion. For example, Dr. Henry Go, after examining Valencia on two different occasions, concluded that she was "totally disabled" and could only engage in "light housework." On December 19, 1980, Valencia was examined by an orthopedic surgeon, Dr. Harvey Dannis. After issuing an extensive and detailed report, Dr. Dannis emphasized that Mrs. Valencia cannot sit or stand for any length of time, is so uncomfortable that she must change positions at 10–15 minute intervals, and must lie down for two hours each day. On the basis of his observations, Dr. Dannis concluded that Mrs. Valencia should not perform "anything more strenuous than sedentary work activities" and even such work could only be undertaken on an irregular basis due to her severe impairments. Perhaps most important, Valencia's treating physician, Dr. Jose Gutierrez Verduzco, certified that he had been attending to Mrs. Valencia since the onset of her back problems in February, 1977, and recommended that she should not engage in "any work that requires effort."

The medical evidence upon which the administrative law judge relied fails to support his conclusion that Valencia retains the ability to engage in "medium work." The conclusion was based principally upon the evaluation of Dr. George Ewing. Dr. Ewing's report indicated that Mrs. Valencia is able to sit for five hours at a time, to stand and walk for six hours a day, and to lift and carry up to ten pounds "frequently" and over ten pounds only "occasionally." However, the Secretary's regulations, attached to Dr. Ewing's report, provide that the capability to perform "medium work" requires that a claimant be able to *frequently* lift and carry objects up to *25* pounds. 20 C.F.R. § 404.1567(c) (1984). Thus, Dr. Ewing's evaluation, wherein he clearly indicated that Mrs. Valencia could lift and carry objects from 10–25 pounds only "occasionally" rather than "frequently," actually belies rather than supports the administrative law judge's conclusion that Valencia retained the ability to engage in "medium work."

The only other medical evidence of record was an evaluation by Dr. K.N. Hurria. Dr. Hurria examined Mrs. Valencia once and concluded that although "she should not lift heavy weights," she could undertake a "sitting type of job." This conclusion hardly represents substantial evidence that Valencia can frequently lift and carry objects up to 25 pounds and, thus, perform medium work.

 We find the overwhelming body of evidence is to the effect that Mrs. Valencia can no longer engage in "medium work;" indeed the record is devoid of any evidence which suggests otherwise.[7]

## V. CONCLUSION

The administrative law judge correctly determined that Valencia's "past relevant work" consisted of her positions as kitchen helper and agricultural laborer, both of which are classified as "medium" work. The Appeals Council erred in holding that Valencia had engaged in past relevant work that was "light." We further find that the law judge's conclusion that Valencia retained the capacity to perform "medi-

---

6. The Appeals Council, having classified some of Valencia's past relevant work as "light," did not address the sufficiency of the administrative law judge's finding that she retained the capacity to perform "medium work." Our review is limited to determining whether that finding is supported by substantial evidence. *See Hall v. Secretary of Health, Education, and Welfare,* 602 F.2d 1372, 1374 (9th Cir.1979).

7. Moreover, when an administrative law judge wishes to disregard the opinion of the treating physician "he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983). *But see Allen v. Heckler,* 749 F.2d 577, 579–80 (9th Cir.1984). No such findings were made in this case.

um work" is not supported by substantial evidence.

Thus, Valencia has demonstrated that her physical impairments prevent her from engaging in her previous occupations. A finding of disability is therefore mandated unless Valencia can perform other types of substantial gainful employment existing in the national economy. In making this determination, the Secretary is required to examine the medical-vocational guidelines. In most cases, the guidelines direct a conclusion of disability or non-disability depending upon the claimant's age, physical ability, education, and work experience. In this case, the uncontroverted evidence presented before the administrative law judge reveals that Valencia is of "advanced age" (55 and over), "limited education" (a non-high school graduate), trained in only unskilled positions, and has a residual functional capacity of either "light" or "sedentary" work. Under these circumstances, the medical-vocational guidelines direct the Secretary to find Valencia disabled. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, Table No. 1, rule 201.01 and Table No. 2, rule 202.01 (1984). Accordingly, we remand so that she may do so.

REVERSED AND REMANDED.

Ferguson, Circuit Judge, dissented and filed an opinion.