Carey v. HHS                          CV-92-605-B    03/02/94

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

Ruth N. Carey

    v.                                    Civil No. 92-605-B

Secretary of Health and Human Services


                          **O R D E R**


    Ruth Carey, ("claimant") brings this action pursuant to 42

U.S.C.A. § 405(g) (West Supp. 1993), challenging a final

determination by the Secretary of Health and Human Services

("Secretary") denying her application for Social Security

disability benefits.  Presently before the court are Plaintiff's

Motion to Remand, and Defendant's Motion for Order Affirming the

Decision of the Secretary.


                 I.  **STANDARD OF REVIEW**

    Pursuant to 42 U.S.C.A. § 405(g), the court is empowered to

"enter, upon the pleadings and transcript of the record, a

judgment affirming, modifying, or reversing the decision of the

Secretary, with or without remanding the cause for a rehearing."

In reviewing a Social Security decision, the factual findings of

the Secretary "shall be conclusive if supported by 'substantial evidence.'" <u>Irlanda Ortiz v. Secretary of Health & Human Serv.</u>, 955 F.2d 765, 769 (1st Cir. 1991) (quoting 42 U.S.C. § 405(g)).[1] Thus the court must "'uphold the Secretary's findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Secretary's] conclusion.'" <u>Id.</u> (quoting <u>Rodriguez v. Secretary of Health & Human Serv.</u>, 647 F.2d 218, 222 (1st Cir. 1981)). Moreover, it is the Secretary's responsibility to "determine issues of credibility and to draw inferences from the record evidence," and "the resolution of conflicts in the evidence is for the Secretary, not the courts." <u>Irlanda Ortiz</u>, 955 F.2d at 769 (citing <u>Rodriguez</u>, 647 F.2d at 222).

## II.  BACKGROUND

Claimant was born on August 29, 1931. She has a high school education, and training as a dental assistant. Her job history

_____

[1] The Supreme Court has defined 'substantial evidence' as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 91 S. Ct. 1420, 1427 (1971). "This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." <u>Consolo v. Federal Maritime Comm'n</u>, 86 S. Ct. 1018, 1026 (1966).

includes positions as a baby sitter, teacher's aid, retail sales/ receptionist, and dental assistant. Claimant asks this court to review the findings and determinations of the Secretary and either remand for further hearing or rule that she is entitled to benefits from "August 10, 1989 up through and including the present date." Complaint, p. 6.

A. **Medical History**

Claimant's medical records indicate that she has a history of back problems. Her doctors have prescribed numerous prescription drugs for her pain including Chymopapain, Maolate, Dalmane, Halcyon, Tolectin, Meclomen, Naprosyn, Quinamm, Parafon-Forte, Wygesic, Codine, Flexoril, and Soma. In June 1988, claimant's problems were aggravated by an auto accident in which she injured her lower back and neck. X-rays of her spine taken after the accident showed some degenerative changes at L 3-4 and her physician diagnosed a cervical lumber strain.

In November, claimant complained to Dr. James M. Shea of pain radiating down her left leg. He examined her and found that she had full range of motion of the spine, and that she flexed to 90 degrees with hesitation. His neurological examination was unremarkable. Dr. Shea opined that claimant needed to leave her job, which involved lifting a disabled child, and obtain another

3

job which required less lifting.

Claimant returned to Dr. Shea in April, 1989, complaining of backaches and pain radiating down her right buttock. She again showed full range of motion and flexed to 90 degrees with hesitation. Dr. Shea found that claimant was experiencing moderate discomfort with percussion over her L-4 and L-5 vertebrae. Moreover, his neurological examination of her lower extremities was unremarkable. This same diagnosis continued through visits in June 1989, September 1989, December, 1989, February, 1990, March 1990, May 1990, and September 1990. During this time, claimant's physicians discussed the possibility of surgery and/or a myelogram, but left the decision about whether or not to proceed to her discretion. Claimant told her doctor that she was afraid to proceed with surgery.

In June 1991, claimant, complaining of increased back pain radiating down to her legs, was referred to Dr. Ronald J. Faille. His examination revealed that her range of motion was limited in all directions, and that her back was tender over the iliac crest bilaterally. Dr. Faille found no tenderness in claimant's midline, and neurological testing revealed normal strength, intact sensation to pin prick, and all reflexes to be brisk. He determined that there was no neurological evidence of nerve

4

compression at that time, but he recommended an MRI to better diagnose the situation.

On June 18, 1991, claimant underwent MRI testing. The results showed her vertebral bodies to be normal in height and signal intensity, however there was decreased signal seen in the lower three intervertebral disc spaces consistent with disc degeneration. The test showed evidence of mild spinal stenosis in the mid-lumbar region, and minimal circumferential bulging at L-23, L-34, and L-45.

Claimant returned to Dr. Shea in August 1991, complaining that she continued to experience back pain down her right leg to her knee. Once again an examination revealed that claimant had a full range of motion, with tenderness over L3, L4 and L5. Dr. Shea's neurological examination of claimant's lower extremities was also unremarkable. Dr. Shea also examined claimant in September when she asserted that she felt the same way she had in August, except she complained that her right leg would sometimes become weak. Dr. Shea's physical examination revealed no changes in claimant's condition, and he prescribed Robaxin. At this time claimant expressed an intention to undergo a myelogram.

When Dr. Shea reexamined claimant in November, 1991, her condition remained unchanged, however she stated that there were

5

days that her back pain was less severe than others, and she complained of only intermittent leg pain. Dr. Shea's physical examination revealed the same results with full range of motion of the spine, no spasm, and his neurological examination of claimant's lower extremities was unremarkable. Claimant stated that she preferred to avoid having a myelogram at that time.

Claimant returned to Dr. Faille in June, 1992, who made the same diagnosis, and recommended a myelogram to determine if claimant had significant spinal stenosis. When the myelogram was performed, it showed some stenosis, measuring less than 10 mm in its anteroposterior height. There was also some bulging suggested at L-2 and L-3, and the 5th lumbar vertebra was totally bacralized. Claimant's final diagnosis was total sacralization of the 5th lumbar vertebra and spinal stenosis at L-3 and L-4.

B. **Procedural History**

Claimant filed an application for disability insurance benefits on or about October 12, 1990. The claim was denied on November 13, 1990. Her request for reconsideration was likewise denied on April 18, 1991. Claimant then requested, and received, a hearing before an Administrative Law Judge (ALJ) on October 3, 1991. The ALJ found that claimant was not entitled to disability

6

benefits, and that:

1) The claimant met the disability insured status requirements of the Act on August 10, 1989, the date the claimant stated she became unable to work, and continued to meet them through September 30, 1990.

2) The claimant did not engage in substantial gainful activity between August 20, 1989 the alleged onset of disability and September 30, 1990 the date that the claimant's insured status expired but has since returned to work as a babysitter beginning in September, 1991.

3) The medical evidence establishes that the claimant has severe degenerative disk changes with bulging and mild spinal stenosis, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4) The claimant's hearing testimony was not entirely credible with respect to her allegations of pain because, as analyzed under the criteria of Social Security Ruling 88-13 and the Avery court order, the allegations did not consistently support a finding of total disability. Rather they supported a determination that claimant had sufficient residual functional capacity for work activity in the sedentary range.

5) The claimant has the residual functional capacity to perform work related activities except for work involving very heavy, heavy, medium, and light work and work involving situations where the claimant would not have an option sit and stand at will every 20 minutes (20 CFR 404.1545).

6) The claimant's past relevant work as a receptionist or dental assistant did not require the performance of work related activities precluded by the above limitation(s) (20 CFR 404.1565).

7

7) The claimant's impairment does not prevent the claimant from performing her past relevant work.

8) The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR 404.1520(e)).

A request for review made to the Appeals Council was denied on September 25, 1992. In its denial, the Appeals Council specifically addressed claimant's new medical records which were not presented to the ALJ. This new evidence consisted of Dr. Faille's report and the results of claimant's myelogram. The Appeals Council concluded that these new reports did not indicate any change in claimant's condition from her previous examinations. It concluded that a consideration of all of the evidence in the record did not warrant a change in the findings set forth in the ALJ's decision. Claimant filed the instant appeal on or about November 30, 1992.

## III. <u>DISCUSSION</u>

### A. <u>Issue</u>

Claimant asserts that her case should be remanded because the Secretary's determination that she was capable of performing her past relevant work was not supported by substantial evidence.

8

**B.    Analysis**

42 U.S.C. § 423 (d)(1)(A) defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which lasted or can be expected to last for a continuous period of not less than 12 months. . . ."   The ALJ used the five step evaluation process outlined in 20 C.F.R. § 404.1520 to determine whether the claimant is disabled.[2]  Generally, a claimant has the burden of proving that he or she is disabled as defined by the Social Security Act.  Deblois v. Secretary of Health and Human Services, 686 F.2d 76, 79 (1st Cir. 1982).  However, the First Circuit has repeatedly recognized that the non-adversarial nature of disability proceedings imposes a certain duty on the Secretary to develop the evidence.  Currier v. Secretary of Health

---

[2] The steps in the process involve a determination of whether: 1) the claimant is engaging in substantial gainful activity, 2) claimant has a severe impairment, 3) the impairment meets or equals a listed impairment, 4) the impairment prevents claimant from doing past relevant work, and 5) the impairment prevents claimant from doing any other work.  See generally 20 C.F.R. § 404.1520.

Education and Welfare, 612 F.2d 594, 598 (1st Cir. 1980); Miranda v. Secretary of Health Education and Welfare, 514 F.2d 996, 998 (1st Cir. 1975).

Step 4 of the analysis requires the ALJ to determine if an impairment prevents claimant from performing her past relevant work.  If claimant is still able to engage in work she has performed in the past, then she is not disabled within the meaning of the Social Security Act.  Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 7 (1st Cir. 1982);  20 C.F.R. § 404.1520(e).

The Step 4 burden is on the claimant, and to meet it she is required to make "some reasonable threshold showing that she cannot return to her former employment because of her alleged disability."  Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991) (citations omitted).  Claimant must produce evidence of the physical and mental demands of her prior work and describe her limitations, indicating how her current functional capacity precludes her from performing her prior job.  Id.  Although the burden is on claimant to show that she is incapable of returning to her past relevant work, the Secretary may not "simply rely upon 'the failure of the claimant to demonstrate [that] the physical and mental demands of her past

10

relevant work' can no longer be met, but,'*once alerted by the record to the presence of an issue*,' must develop the record further." Santiago, 944 F.2d at 5-6 (quoting May v. Bowen, 663 F. Supp. 388, 394) (D.Me. 1987) (emphasis in original).

### 1. Claimant's Past Work as a Dental Assistant

Claimant testified that she had two previous jobs as a dental assistant. The first involved very close assistance to the dentist, which required her to sit at his side for prolonged periods. Her second position enabled her to stand, which claimant testified she found easier to tolerate. She testified that she left both positions, each of which lasted for approximately eight months, because of her back pain. Claimant further testified that, at the hearing, she was experiencing increased pain both in her knees and back due to a car accident that she was involved in after she left her second position.

Claimant testified that her functional limitations included restrictions on her ability to both push and pull. Further, she testified that she experienced pain when bending or lifting. She testified that she did laundry and was able to go grocery shopping. She visited her mother, and occasionally went to restaurants. In addition, she stated that she was able to lift a gallon of milk, but not a 20 pound baby without discomfort. She

11

testified that she was able to bend over and touch her knees, but it bothered her, and she could climb stairs but they bothered her as well.  She testified that she could manipulate her fingers well, but her right foot sometimes bothered her when driving. Claimant also testified that she was able to sit for 20 minutes and then her back "start[ed] pulling (sic) [on] me".  She gave the same 20 minute limitation for standing.

In determining whether the plaintiff was able to perform her past relevant work, the ALJ used factors outlined in Social Security Ruling 88-13 and Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir. 1986).  The ALJ reports that she considered factors such as:

> the claimant's prior work record and information and observations of treating and examining physicians and third parties regarding such matters as: the nature, location, onset, frequency, radiation, and intensity of any pain, precipitating and aggravating factors; type, dosage, effectiveness and adverse side-effects of any pain medication; treatment, other than medication for relief of pain; functional restrictions; and the claimant's daily activities.

In light of these factors, the ALJ determined that the claimant was capable of sedentary work as defined by 20 C.F.R. 404.1567(a).[3]  Claimant apparently does not dispute this finding.

_____

[3] Sedentary work is defined in the Social Security regulations as that which involves "lifting no more than 10

Claimant does, however, dispute the ALJ's finding that with this capacity, she would be able to return to her past work as a receptionist or a dental assistant.

Claimant's testimony about her two previous positions as a dental assistant was concise and she plainly testified that she believed she would not be able to return to either position. She testified concerning the physical demands of her prior work and how she believed that her current functional capacity prevented her from performing her prior jobs.

The ALJ found claimant capable of sedentary work so long as she were allowed to change position between sitting and standing every 20 minutes. Uncontroverted testimony indicates that this restriction could not be accommodated at claimant's first dental assistant position. However, the record is silent as to whether it could be accommodated in her second position.

A vocational expert ("VE") testified that the job of dental assistant is normally characterized as exertionally light with a skill level of 6. In response to the ALJ's first hypothetical question assuming that claimant was unable to sit or stand for

pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. 404.1567(a).

13

more than 20 minutes at a time, and that she was taking medication that would leave her spacey or groggy, the VE testified that the only previous job that claimant would be able to return to would be her "receptionist" position. The VE further testified that if claimant were capable of light work without sitting or standing limitations, she would be able to return to her past work as dental assistant, however she would not be able to return to that position if the sitting and standing restrictions were applied. The VE also testified that if claimant were classified as sedentary, her skills as a dental assistant were not transferable.

The Secretary does not dispute the ALJ's finding that claimant has only the residual functional capacity for sedentary work. Accordingly, the ALJ cannot rely on testimony given by the VE to show that claimant can return to her past relevant work as a dental assistant because the VE testified that a dental assistant's job required the ability to do light duty work. Further, because claimant testified that she could not return to either of the dental assistant jobs she had previously held, I find that the record does not contain substantial evidence to support the Secretary's conclusion that claimant would be able to return to her past relevant work as a dental assistant.

14

## 2. Claimant's Past Relevant Work as Receptionist/ Cashier

The Secretary also contends that claimant would be able to return to a position as a receptionist or appointment clerk, a skill which she learned at her job at the Genest Bakery. Claimant testified that her job at the bakery entailed answering the phone, setting up appointments, and working at the retail store which involved standing at the cash register and lifting racks of bread that weighed over 20 pounds. Because of the diverse duties that claimant performed at this position, the VE testified that she could not assign it a specific listing from the Dictionary of Occupations. Instead, the VE only made the assessment that given the restrictions imposed by a sedentary exertional level and sitting and standing limitations of 20 minutes, claimant would be able to work as an appointment clerk. The VE specifically testified that she was not characterizing claimant's job at the bakery as an appointment clerk's job because the VE determined that claimant's duties also involved medium work at a semi-skilled level. Nevertheless, the ALJ disregarded this testimony and characterized claimant's work at the bakery as an appointment clerk position in rendering her decision. In doing so she bifurcated claimant's position at the

16

Genest bakery, and likened a portion of claimant's duties at the bakery to the VE's testimony concerning the appointment clerk position. Claimant contends that this bifurcation was improper. I agree.

In order to be eligible for disability benefits, it is not sufficient that a claimant show merely an inability to return to a particular job. Rather, the claimant "must establish an inability to return to her former type of work." Gray v. Heckler, 760 F.2d 369, 372 (1st Cir. 1985). The instant case poses the problem of evaluating claimant's past relevant work when her previous position entails two different types of work with two different exertional levels.

The court in Taylor v. Bowen, 664 F. Supp. 19 (D.Me. 1987), faced a very similar issue when the ALJ found the claimant capable of returning to her previous relevant work based on half of her duties there. The Taylor claimant's past relevant work was a combination receptionist/ general office position which had an exertional level of sedentary for the receptionist position and light work with significant reaching, pushing and pulling for general office work. Finding claimant capable of sedentary work, the ALJ bifurcated claimant's previous position and denied benefits at Step 4 based on the fact that she could "return" to

17

being a receptionist.  The <u>Taylor</u> court vacated the decision of the Secretary and remanded the case for further consideration, requiring the Secretary to perform a Step 5 analysis.

As the <u>Taylor</u> court noted, the Ninth Circuit Court of Appeals had reached the same conclusion on similar facts in <u>Valencia v. Heckler</u>, 751 F.2d 1082 (1985).  The <u>Valencia</u> claimant had worked as an agricultural laborer, whose duties included harvesting tomatoes and cherries, and sorting tomatoes at a machine. 751 F.2d at 1086.  The ALJ opined that claimant could return to this job if she only sorted tomatoes.  The Ninth Circuit disagreed, reasoning that:

> Every occupation consists of a myriad of tasks, each involving different degrees of physical exertion.  To classify an applicant's "past relevant work" according to the least demanding function of the claimant's past occupations is contrary to the letter and spirit of the Social Security Act.

<u>Valencia</u>, 751 at 1086; <u>see also</u> <u>Rogers v. Schweiker</u>, 558 F. Supp. 1358, 1360 (N.D. Ala 1983) ("[t]wo positions which share the same title and have certain activities in common are not the same 'kind of work' where one requires a different functional capacity from the other.").

Applying this reasoning to the instant case, the ALJ employed an erroneous interpretation of prior work in

18

characterizing her prior job as a receptionist's position.  Had the ALJ correctly characterized claimant's past job at the bakery, she would have been required to find that claimant was unable to return to her past relevant work.  Accordingly, claimant's case must be remanded so that the ALJ can conduct a Step 5 analysis.

### III.  CONCLUSION

The Secretary's decision is vacated and this matter is remanded for a new hearing consistent with this order.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

March 2, 1994

cc:  Raymond J. Kelly, Esq.
     Gretchen L. Witt, Esq.

19